DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Marshall S. Huebner
Ben S. Kaminetzky
Darren S. Klein
Christopher S. Robertson
Marc J. Tobak
Nicholas D'Angelo

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard East
New York, New York 10001
Telephone: (212) 909-6000
Jasmine Ball
Elie J. Worenklein

*Counsel to the Debtors and Debtors in Possession*
*and Plaintiff Spirit Airlines, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SPIRIT AVIATION HOLDINGS, INC., *et al.*,[1] | Case No. 25-11897 (SHL) |
| Debtors. | (Jointly Administered) |
| SPIRIT AIRLINES, LLC, | |
| Plaintiff, | Adversary Proceeding No. 26-_____ (SHL) |
| v. | **ADVERSARY COMPLAINT** |
| CSDS ASSET MANAGEMENT LLC, | |
| Defendant. | |

[1]The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

Plaintiff Spirit Airlines, LLC ("**Spirit**" or "**Plaintiff**"), a debtor and debtor in possession in the above-captioned chapter 11 cases, by and through its undersigned counsel, brings this action against Defendant CSDS Asset Management LLC ("**CSDS**" or "**Defendant**") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for money damages, equitable relief, and an accounting arising from Defendant CSDS wholesale failure to perform under the Aircraft Sale and Purchase Agreement (SPIRIT-CSDS 2026), dated as of February 9, 2026 (as amended and in effect, the "**APA**"), and the related Escrow Agreement, dated as of February 9, 2026 (as amended and in effect, the "**Escrow Agreement**"), each of which this Court approved pursuant to the *Order (A) Authorizing the Sale of Certain Aircraft Free and Clear of All Liens, Claims and Encumbrances and Other Interests and (B) Granting Related Relief* [ECF No. 991] (the "**HFS Sale Order**"),[2] and from CSDS's suspected involvement in causing or procuring the disappearance of more than $48 million from the escrow account established pursuant to the Escrow Agreement.

2. Under the APA, CSDS agreed to purchase 20 aircraft from Spirit (each an "**HFS Aircraft**," and collectively, the "**HFS Aircraft**"). Since the entry of the HFS Sale Order, CSDS has repeatedly breached its obligations, and defaulted, under the APA. Of the 20 HFS Aircraft that CSDS agreed to purchase, CSDS has closed on only one—the aircraft bearing U.S. registration number N696NK ("N696NK")—and even then only after Spirit sent CSDS a default notice for that aircraft.

3. CSDS has failed to close on every other HFS Aircraft tendered to it for delivery. Every HFS Aircraft that Spirit has tendered to CSDS since N696NK has ended in a Buyer's Default

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the APA.

(as defined in the APA): the aircraft bearing U.S. registration numbers N691NK ("**N691NK**"), N640NK ("**N640NK**"), N650NK ("**N650NK**"), and N682NK ("**N682NK**"). Four Buyer's Defaults is the threshold at which the APA expressly entitles Spirit to terminate the APA and to receive the entire remaining escrow.

4. In light of CSDS's unbroken pattern of defaults, Spirit exercised its express contractual right and terminated the APA on October 9, 2026. On October 13, the Debtors learned that the Escrow Account had been emptied in violation of the Escrow Agreement.

5. CSDS's persistent defaults have materially prejudiced the Debtors, their estates, and their stakeholders. Spirit accordingly brings this action for (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, (iii) conversion, (iv) unjust enrichment, (v) fraudulent misrepresentation, and (vi) an accounting, and seeks, among other things, a judgment declaring Spirit entitled to, and directing the return of, the $48,015,000 in Escrow Funds; compensatory damages in an amount to be proven at trial; disgorgement; an accounting; punitive damages; pre- and post-judgment interest; and costs and attorneys' fees.

## PARTIES

6. Plaintiff Spirit Airlines, LLC is a debtor and debtor in possession in the above-captioned jointly administered chapter 11 cases (the "**Chapter 11 Cases**") of Spirit Aviation Holdings, Inc. and its direct and indirect subsidiaries (collectively, the "**Debtors**"). Spirit's mailing address is 1731 Radiant Drive, Dania Beach, Florida 33004. Spirit is the "Seller" under the APA and the Escrow Agreement.

7. Defendant CSDS Asset Management LLC is a limited liability company headquartered at 13880 N. Adonis Road, Marana, Arizona 85658. CSDS is the "Buyer" under the APA and the Escrow Agreement. CSDS's President, Benedict Sirimanne, executed the Second CMLA (defined below) on behalf of CSDS.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431 of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

9. This adversary proceeding constitutes a "core" proceeding within the meaning of 28 U.S.C. § 157(b). In the event that this or any other appropriate Court finds any part of this adversary proceeding to be "non-core," Plaintiff consents to the entry of final orders and judgments by this Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

10. In the HFS Sale Order, this Court expressly "retain[ed] jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Aircraft Sale Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which Spirit is a party or which has been assigned by Spirit to the Stalking Horse Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale." HFS Sale Order ¶ 26. The Escrow Agreement, the First CMLA, and the Second CMLA (each defined below) were executed in connection with the APA, and Spirit is a party to each.

11. The APA and the Escrow Agreement each expressly contemplate that this Court will have jurisdiction to enforce those agreements. *See* APA § 10.6(b); Escrow Agreement § 6(b), (c). The Second CMLA further provides that "[t]he Bankruptcy Court shall have exclusive jurisdiction in relation to any legal action or proceeding arising out of or in connection with this Agreement, the subject matter hereof or any of the transactions contemplated hereby."

12. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under, arises in, and relates to the Chapter 11 Cases pending in this District.

13. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001.

## FACTUAL BACKGROUND

### A. The Sale Process and the Court's Approval of the APA and Escrow Agreement

14. On February 9, 2026, Spirit, as seller, and CSDS, as buyer, entered into the APA, pursuant to which CSDS agreed to purchase the 20 HFS Aircraft from Spirit. APA § 2.1 ("With respect to the Aircraft, Seller agrees to sell and Buyer agrees to buy the Aircraft, upon and subject to the terms and conditions of this Agreement.").

15. In connection with the execution of the APA, Spirit, CSDS, and the Escrow Agent entered into the Escrow Agreement, also dated as of February 9, 2026.

16. On February 11, 2026, the Debtors filed the Debtors' Motion for Entry of (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Certain Aircraft, (B) Approving the Form and Manner of Applicable Notices and (C) Scheduling an Auction and Sale Hearing and (II) an Order (A) Authorizing the Sale of Aircraft and Related Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (B) Granting Related Relief [ECF No. 770] (the "Sale Motion"), seeking authorization to enter into the APA with CSDS as a stalking horse buyer, subject to an auction.

17. On April 2, 2026, the Debtors filed the Notice of Cancellation of Auction and Designation of Stalking Horse Buyer as the Successful Bidder [ECF No. 925], announcing the sale of the HFS Aircraft to CSDS following a competitive marketing process.

18. On April 24, 2026, the Court entered the HFS Sale Order, approving the APA "and all other ancillary documents, and all of the terms and conditions thereof." HFS Sale Order ¶ 5. The ancillary documents included the Escrow Agreement, which was required by the APA.

**B. The Key Terms of the APA and the Escrow Agreement**

19. Under the Escrow Agreement, CSDS was required to pay $53,350,000 to the Escrow Agent within three business days of execution of the APA—i.e., by February 12, 2026—to be held by the Escrow Agent subject to the provisions of the Escrow Agreement (the "Deposit Amount").

20. Pursuant to the Escrow Agreement, in the event of a Buyer's Default, the Escrow Agent shall pay to Spirit 1/20 of the Escrow Funds, or $2,667,500 for each aircraft subject to a Buyer's Default. Section 6(a)(ii) of the Escrow Agreement provides, in relevant part, that "if (and only if) Seller has given to the Escrow Agent (with a copy to Buyer) written notice that a Buyer's Default has previously occurred with respect to such Aircraft and is continuing or is not curable, then an amount equal to 1/20 of the Escrow Funds shall be paid to Seller in respect of such Aircraft."

21. Section 6(b)(2) of the Escrow Agreement provides that, absent agreement, "the Escrow Agent shall refrain from distributing the applicable portion of the Escrow Funds until either (A) the Escrow Agent receives notice that the Bankruptcy Court has issued a ruling as to whether the relevant conditions for an applicable portion of Escrow Funds to be paid to Buyer or Seller, as the case may be, have been satisfied . . . , or (B) the Parties notify the Escrow Agent in writing of their agreement as to the disposition of such portion of the Escrow Funds." Section 6(b)(2) further requires that the parties "discuss[] in good faith a potential resolution to the circumstances giving rise to such notice" during a "Resolution Period." And Section 6(c) provides

that "the Escrow Agent shall disburse Escrow Funds only in accordance with; (x) joint instructions signed by each of Buyer and Seller; (y) a Bankruptcy Court order directing such disbursement or (z) Buyer's Confirmatory Unilateral Disbursement Notice as provided herein."

22. The APA defines "Buyer's Default" to mean the occurrence of one or more of the following events:

> (i) with respect to any Aircraft, Buyer's failure to accept the Delivery of such Aircraft when required to do so in accordance with all applicable terms and conditions of this Agreement . . . and failure to cure such default within five (5) Business Days of Seller's written notice to Buyer; (ii) with respect to any Aircraft, any of the conditions precedent set forth in clauses (e), (f), (g), (j) or (k) of Section 4.1 is not satisfied (or waived by Seller in its sole and absolute discretion) by the Delivery Window Deadline for such Aircraft and such failure is not due to or arising from a breach by Seller of its obligations under this Agreement and failure to cure such default within five (5) Business Days of Seller's written notice to Buyer; or (iii) (A) any failure by Buyer to observe or perform any of its other material obligations under this Agreement if such failure continues for fifteen (15) days after written notice thereof is delivered to Buyer from Seller . . . , or (B) the occurrence of a default by Buyer described in the foregoing clauses (i) or (ii) with respect to four or more Aircraft.

APA § 1.1.

23. Section 4.1(e) of the APA provides that "receipt by Seller of the full Purchase Price for such Aircraft" is a condition precedent to closing, and failure to satisfy this condition constitutes a Buyer's Default under clause (ii) of the definition thereof. Spirit has not waived the condition precedent in Section 4.1(e).

24. Section 6.3(a) of the APA provides that, if any default described in clause (i) or (ii) of the definition of "Buyer's Default" should occur in respect of an Aircraft, Seller may, at its sole discretion so long as such default is continuing, "terminate this Agreement immediately with respect to such Aircraft effective upon such written notice to Buyer, and in this case . . . Seller shall be entitled to obtain the Aircraft Specific Deposit for such terminated Aircraft from the

Escrow Agent." Section 6.3(a) further provides that, if any default described in clause (iii) of the definition of "Buyer's Default" should occur, Seller may "terminate this Agreement immediately with respect to such Pending Aircraft effective upon such written notice to Buyer, and in this case . . . Seller shall be entitled to obtain the Aircraft Specific Deposit(s) for such Pending Aircraft and instruct the Escrow Agent to pay the Aircraft Specific Deposit for such Pending Aircraft to Seller." The APA defines "Pending Aircraft" as "all of the Aircraft for which the Delivery hereunder have not yet occurred and the Sale of which hereunder has not previously been terminated."

**C. CSDS's Pattern of Nonperformance Begins Immediately: The Late Deposit**

25. CSDS's pattern of nonperformance began almost immediately after execution of the APA. CSDS only partially remitted the Escrow Funds by the February 12, 2026 deadline. CSDS remitted the full balance of the $53,350,000 Deposit Amount six days late, on February 18, 2026.

**D. The First HFS Aircraft (N696NK): CSDS Closes Only After a Default Notice**

26. On July 20, 2026, Spirit sent CSDS a default notice due to CSDS's failure to remit the Purchase Price (as defined in the APA) for N696NK. CSDS eventually remitted the Purchase Price and closed on N696NK on July 24, 2026. N696NK is the only HFS Aircraft on which CSDS has closed.

**E. The Second HFS Aircraft (N691NK): CSDS Admits a Buyer's Default**

27. CSDS then defaulted on its purchase obligation with respect to N691NK. Pursuant to that Certain Matters Letter Agreement, dated as of August 17, 2026 (the "**First CMLA**"), CSDS agreed that (i) a Buyer's Default under the APA existed with respect to N691NK and (ii) the

Escrow Funds attributable to N691NK were to be paid to Spirit. Those Escrow Funds were paid to Spirit by the Escrow Agent.

**F. The Third HFS Aircraft (N640NK): CSDS Defaults Under the Second CMLA**

28. On August 26, 2026, Spirit and CSDS entered into the Second Certain Matters Letter Agreement (the "**Second CMLA**"), which modified certain terms of the APA and the Escrow Agreement with respect to N640NK. The Second CMLA was accepted and agreed on behalf of CSDS by its President, Benedict Sirimanne.

29. In the Second CMLA, CSDS confirmed that it and its technical representative, T3, had confirmed formal Technical Acceptance of N640NK on August 22, 2026, reserving only with respect to the landing gear ("**LG**") actuator. The parties agreed that the Purchase Price for N640NK would be reduced as "the definitive price concession to address the LG actuator condition and for all wear and tear related to N640." Second CMLA § 1(i).

30. CSDS further agreed in the Second CMLA that Delivery of N640NK would occur no later than the "agreed outside closing date for N640" "with no additional cure period (overriding the relevant dates for N640 in the ASPA, including Annex X and any relevant grace periods, such that a Buyer's Default will be automatic if Seller satisfactorily performs the LG actuator overhaul (subject to Buyer's acceptance of the overhaul and the LG storage box as provided above), and Delivery of N640 has not occurred on or prior to the agreed outside closing date for N640)." Second CMLA § 1(h). The Second CMLA further provides that "for all delivery and acceptance periods set forth in this Letter Agreement time is of the essence."

31. On September 16, 2026, Spirit delivered to CSDS Invoice No. 640-6507-3. CSDS agreed to the calculated Purchase Price, which included certain deductions for wear and tear.

32. From September 15, 2026, through September 23, 2026, Spirit repeatedly emailed CSDS to provide documents for its review in connection with the upcoming closing of N640NK. During that period, Spirit's counsel repeatedly circulated closing documents for CSDS's execution via the DocuSign platform, and repeatedly advised CSDS that CSDS's signatures remained pending on, among other things, the CSDS Compliance Certificate Statement, the Closing Notice, the Aircraft Acceptance Certificate, and the Assignment Statement, and that N640NK's Registration Application, Tax Form, and Insurance Certificate remained outstanding. Spirit, by contrast, made available a Warranty Bill of Sale for N640NK executed and delivered in escrow.

33. On September 22, 2026, CSDS confirmed in writing its acceptance of "the LG storage box and overhaul of the LG actuator" referred to in Section 1 of the Second CMLA. This correspondence demonstrated, among other things, that all conditions precedent to the obligations of CSDS with respect to N640NK had been satisfied, and that CSDS had at least a month to prepare for closing. The "agreed outside closing date for N640" within the meaning of the Second CMLA thereby occurred on September 23, 2026.

34. At 11:59 p.m. on September 23, 2026, CSDS failed to accept Delivery of N640NK when required to do so in accordance with all applicable terms and conditions of the APA (as modified by the Second CMLA). As expressly agreed in the Second CMLA, that failure constitutes a Buyer's Default under the APA with respect to N640NK.

35. On September 24, 2026, Spirit emailed CSDS, noting that neither Spirit nor the Escrow Agent had received any funds from CSDS and that certain conditions precedent to closing remained outstanding, and attaching a Notice of Buyer's Default and related Escrow Instruction addressed to the Escrow Agent in respect of N640NK. Spirit also transmitted to CSDS a joint instruction letter directing the Escrow Agent to release the Escrow Funds attributable to N640NK

(the "**N640NK Escrow Funds**") to Spirit, stating that "Spirit is exercising all of its remedies under clause (ii) of the first sentence of Section 6.3(a) of the APA, and requests that CSDS sign the attached so that Spirit can promptly be paid the escrow deposit and avoid having to file a motion with the Bankruptcy Court requesting an order to release such escrow deposit to Spirit." Spirit terminated the APA with respect to N640NK.

36. CSDS did not sign the joint instruction letter for the N640NK Escrow Funds. Spirit never received the Purchase Price for N640NK.

### G. The First Escrow Motion

37. On September 25, 2026, the Debtors filed the Debtors' Motion for Entry of an Order Enforcing the HFS Sale Order for Release of Escrow Funds [ECF No. 1659] (the "**First Escrow Motion**"), seeking an order enforcing the HFS Sale Order and directing the Escrow Agent to release the N640NK Escrow Funds to Spirit.

38. Neither CSDS nor any other party filed any timely objection to the First Escrow Motion by the objection deadline of 4:00 p.m. on October 2, 2026, or any untimely objection as of October 9, 2026. On October 9, 2026, the Debtors filed the Debtors' Reply in Further Support of the Motion for an Order Enforcing the HFS Sale Order for Release of Escrow Funds [ECF No. 1694] (the "**Reply**"), noting that the relief requested in the First Escrow Motion stood uncontested. A hearing on the First Escrow Motion was scheduled for October 14, 2026.

### H. The Fourth and Fifth HFS Aircraft (N650NK and N682NK): Two More Buyer's Defaults

39. <u>N650NK.</u> Spirit tendered N650NK to CSDS for Delivery on September 15, 2026. On September 16, 2026, Spirit delivered to CSDS Invoice No. 650-7724-4 (the "**N650NK Invoice**"), which reflected the Purchase Price for N650NK net of the Escrow Funds attributable to N650NK held by the Escrow Agent (the "**N650NK Escrow Funds**") and an adjustment agreed

pursuant to the Second CMLA, as such adjustment was further revised as subsequently agreed between Spirit and CSDS. CSDS failed to pay the N650NK Invoice by the agreed outside closing date for N650NK of September 25, 2026.

40. On September 26, 2026, Spirit sent CSDS a notice of default for N650NK. CSDS failed to cure that default during the five Business Day cure period provided in subsection (ii) of the definition of "Buyer's Default," resulting in a Buyer's Default on N650NK. On October 3, 2026, Spirit emailed CSDS a notice of Buyer's Default and joint instruction letter (the "N650NK Joint Instruction Letter") and confirmed that the APA had terminated with respect to N650NK. CSDS has not executed the N650NK Joint Instruction Letter.

41. Spirit tendered N682NK to CSDS for Delivery on September 21, 2026. On September 29, 2026, Spirit delivered to CSDS Invoice No. 682-7957-4 (the "**N682NK Invoice**"), which reflected the Purchase Price for N682NK net of the Escrow Funds attributable to N682NK held by the Escrow Agent (the "N682NK Escrow Funds") and an adjustment agreed between Spirit and CSDS. CSDS failed to pay the N682NK Invoice by the agreed outside closing date for N682NK of September 30, 2026.

42. On October 1, 2026, Spirit sent CSDS a notice of default for N682NK. CSDS failed to cure that default during the five Business Day cure period provided in subsection (ii) of the definition of "Buyer's Default," resulting in a Buyer's Default on N682NK. On October 9, 2026, Spirit emailed CSDS a notice of Buyer's Default and joint instruction letter (the "**N682NK Joint Instruction Letter**") and confirmed that the APA had terminated with respect to N682NK. CSDS has not executed the N682NK Joint Instruction Letter.

43. CSDS failed to close on N650NK and N682NK neither as initially agreed nor during the five-day cure period for each default. CSDS refused to accept Delivery or remit the

applicable Purchase Prices for either aircraft, despite all conditions precedent to its obligations under the APA having been satisfied, and despite its express agreement under Section 10.1 of the APA that time is "of the essence with respect to closing."

**I. The Fourth Buyer's Default and Spirit's Termination of the APA**

44. With the Buyer's Defaults on N691NK, N640NK, N650NK, and N682NK, a default described in clause (iii)(B) of the definition of "Buyer's Default"—"the occurrence of a default by Buyer described in the foregoing clauses (i) or (ii) with respect to four or more Aircraft"—occurred and is continuing.

45. On October 9, 2026, Spirit elected, pursuant to Section 6.3(a) of the APA, to terminate the APA with respect to all remaining Pending Aircraft by delivering a termination notice to CSDS (the "Termination Notice"). The same day, Spirit sent CSDS a joint instruction letter for the release of the remaining Escrow Funds attributable to the Pending Aircraft (the "Pending Aircraft Joint Instruction Letter," and together with the joint instruction letter for the N640NK Escrow Funds, the N650NK Joint Instruction Letter, and the N682NK Joint Instruction Letter, the "Joint Instruction Letters"). Spirit has also notified CSDS that the HFS Aircraft will be remarketed.

46. CSDS did not sign the Pending Aircraft Joint Instruction Letter.

**J. The Escrow Funds Disappear**

47. Spirit became aware for the first time on October 13, 2026 that the required Escrow Funds had been removed. Upon information and belief, CSDS has, or parties acting at its behest or in combination with it have, circumvented the clear, agreed-upon terms for the Escrow Funds to simply steal what rightfully belongs to the Debtors and the estates.

48. The Debtors understood that the Escrow Agent was holding $48,015,000 of Escrow Funds, after the release of $5,335,000 of Escrow Funds attributable to the purchase of the aircraft bearing U.S. registration number N696NK and a Buyer's Default (as defined in the APA) on the aircraft bearing U.S registration number N691NK.

**K. The Harm to Spirit and the Debtors' Estates**

49. Throughout the period following entry of the HFS Sale Order, CSDS and its counsel repeatedly offered Spirit assurances of performance that proved false and made commitments that they did not honor.

50. Since the entry of the HFS Sale Order, the sale of the HFS Aircraft has made almost no progress, with 19 of the 20 HFS Aircraft remaining unsold, thereby preventing distributions to the Debtors' stakeholders.

51. CSDS's failure to close on the HFS Aircraft (other than N696NK) has forced the Debtors to bear material additional financing costs, as the aircraft remain Spirit's property and the debt that was to be paid down from their proceeds remains outstanding. These costs will continue to mount while the Debtors remarket the HFS Aircraft, a process that is almost certain to take several additional months. As a result, the net proceeds of the sale of the HFS Aircraft will be millions of dollars less than had CSDS performed, even if such aircraft are sold to a new buyer at the prices agreed with CSDS. The Debtors were to be compensated for these injuries through the Escrow Funds as liquidated damages, but now stand to lose those as well because the Escrow Funds have vanished from the Escrow Account.

52. The Debtors and other stakeholders have also incurred significant additional expenses negotiating with CSDS and seeking to enforce the APA and the HFS Sale Order—expenses that would have been entirely unnecessary had CSDS performed as required. Every delay

caused by CSDS's repeated failures to honor its obligations under the APA directly frustrates Spirit's efforts to monetize the value of the HFS Aircraft for the benefit of Spirit's creditors.

**FIRST CAUSE OF ACTION**

**(Breach of Contract — the APA and the Escrow Agreement)**

53. Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

54. The APA is a valid and enforceable contracts between Spirit and CSDS.

55. The Escrow Agreement is a valid and enforceable contract among Spirit, CSDS, and the Escrow Agent.

56. Spirit has performed all of its obligations under the Agreements, including by tendering N640NK, N650NK, and N682NK for Delivery; delivering invoices reflecting the agreed Purchase Prices; executing and delivering closing documents in escrow, including a Warranty Bill of Sale for N640NK; satisfying all conditions precedent to CSDS's obligations; and delivering all required notices of default and of Buyer's Default.

57. CSDS materially breached the Agreements by, among other things: (a) failing to remit the full Deposit Amount by February 12, 2026, as required; (b) failing to accept Delivery of, and remit the Purchase Price for, N691NK, N640NK, N650NK, and N682NK when required, in breach of APA §§ 2.1 and 4.1(e) and the Second CMLA, giving rise to four Buyer's Defaults; (c) failing to close on the HFS Aircraft by the applicable deadlines, notwithstanding that time was of the essence under APA § 10.1 and the Second CMLA; (d) failing to act in a commercially reasonable manner to effect the closing of the transactions contemplated by the APA in a prompt manner, in breach of APA § 10.1; (e) refusing to execute the Joint Instruction Letters and thereby preventing the release of the Withheld Escrow Funds to which Spirit is entitled; (f) procuring the

improper transfer of the Escrow Funds out of the Escrow Account in violation of the Escrow Agreement.

58. As a direct and proximate result of CSDS's breaches, Spirit has suffered damages, including the loss of the use Escrow Funds; material additional financing costs on the unsold HFS Aircraft; the reduction in net sale proceeds resulting from costs of delay and remarketing; and significant additional professional expenses incurred negotiating with CSDS, seeking to enforce the Agreements and the HFS Sale Order, and in pursing this proceeding.

59. Spirit is entitled to (i) a judgment declaring that four Buyer's Defaults have occurred, that Spirit validly terminated the APA, and that Spirit is entitled to the Withheld Escrow Funds in the amount of $48,015,000 (and, to the extent not previously released, the N640NK Escrow Funds); (ii) an order directing the Escrow Agent to release the Withheld Escrow Funds to Spirit and/or specific performance requiring CSDS to execute the Joint Instruction Letters; and (iii) expectation, compensatory, and/or punitive damages, attorney's fees, and costs, in an amount to be proven at trial, together with pre- and post-judgment interest.

**SECOND CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

60. Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

61. Spirit and CSDS are parties to the APA, the Escrow Agreement, the First CMLA, and the Second CMLA, each of which was executed by Spirit, as seller, and CSDS, as buyer, and the APA and the Escrow Agreement of which were approved by this Court in the HFS Sale Order. The Agreements contain an implied covenant of good faith and fair dealing. The Agreements also reflect the parties' express commitments to act promptly and in a commercially

reasonable manner, APA § 10.1, and to "discuss[] in good faith a potential resolution" of disputes concerning the Escrow Funds during the Resolution Period, Escrow Agreement § 6(b)(2).

62. CSDS breached the implied covenant by, among other things: (a) holding the Escrow Funds hostage, notwithstanding that Spirit's entitlement to those funds is clear and that CSDS has offered no justification for refusing to deliver them; (b) failing to return signature pages, insurance certificates, tax forms, and registration applications repeatedly requested by Spirit for closing; and (c) offering assurances of performance that proved false and making commitments that it did not honor; (d) procuring the improper transfer of the Escrow Funds.

63. CSDS's conduct has deprived Spirit of the benefit of the Agreements.

64. As a direct and proximate result of CSDS's breaches of the implied covenant, Spirit has suffered damages in an amount to be proven at trial, including increased financing costs, reduced net sale proceeds, and the costs of enforcement. Spirit is entitled to expectation and/or compensatory damages in an amount to be proven at trial, together with pre- and post-judgment interest, attorney's fees, and costs.

**THIRD CAUSE OF ACTION**

**(Conversion)**

65. Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

66. The Escrow Funds are a specific, identifiable, and segregated fund held by the Escrow Agent under the Escrow Agreement. The Escrow Agreement specifically provides that CSDS has no right to the Escrow Funds unless and until release of the Escrow Funds to CSDS is authorized by a signed joint instruction or order of the Bankruptcy Court.

67. The Debtors have not signed and have not authorized execution of any joint instruction permitting release of any amount of the Escrow Funds to CSDS or any other third party.

68. The Court has not issued any order authorizing or directing release of Escrow Funds to CSDS or any third party.

69. On information and belief, CSDS, or parties acting at its behest or under its control, or in combination with CSDS, have exercised unauthorized dominion and control over the Escrow Funds by causing or procuring the Escrow Funds to be disbursed in violation of the Escrow Agreement.

70. As a direct and proximate result of CSDS's conversion, Spirit has been deprived of the Escrow Funds and their use. CSDS's conduct was willful, wanton, and in conscious disregard of Spirit's rights and CSDS's obligations under the APA and the Escrow Agreement.

71. Spirit is entitled to the return of the Withheld Escrow Funds or, alternatively, damages in the amount of the Withheld Escrow Funds, $48,015,000, together with interest from the date of conversion, and punitive damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**(Unjust Enrichment)**

72. Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

73. Spirit asserts this claim for unjust enrichment in the alternative to its claims for breach of contract and breach of the implied covenant of good faith and fair dealing, to the extent CSDS disputes the existence, validity, scope, or continued effectiveness of the Agreements, or contends that the Agreements do not govern its retention of the Withheld Escrow Funds following termination of the APA.

74. CSDS has been enriched unjust retention of the benefit of, and control over, the Escrow Funds.

75. CSDS's enrichment has come at the direct expense of Spirit, the Debtors' estates, and their creditors, who have been deprived of the Escrow Funds.

76. It would be against equity and good conscience to permit CSDS to retain the benefit of the Escrow Funds, which CSDS deposited as security for its performance and which, on information and believe, CSDS has caused or procured to be disbursed to third parties at its behest, under its control, or in combination with it, with the purpose of depriving the Debtors of the Escrow Funds.

77. Spirit is entitled to restitution and disgorgement of all amounts and benefits by which CSDS has been unjustly enriched, including the Withheld Escrow Funds, together with interest.

**FIFTH CAUSE OF ACTION**

**(Fraudulent Misrepresentation)**

78. Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

79. CSDS, by and through its Managing Member, Sriyantha Benedict Sirimanne, represented in a declaration signed under penalty of perjury, that, among other things:

- CSDS "is financially capable of consummating the transactions contemplated by the Aircraft Sale Agreement";
- CSDS "has, and at the time of each Delivery will have, sufficient funds available to pay the Purchase Price for each Aircraft and to consummate the transactions contemplated by the Aircraft Sale Agreement";

- "There are no side agreements, side letters, or other undisclosed arrangements between [CSDS] and any person or entity relating to the Sale, the Aircraft, or the bidding process";
- CSDS "has proceeded in good faith in all respects"
- CSDS " remains ready, willing, and able to consummate the Sale in accordance with the terms and conditions of the Aircraft Sale Agreement and the Sale Approval Order";
- CSDS "intends to accept Delivery of each of the Aircraft on the applicable Delivery Dates in accordance with the Aircraft Sale Agreement and to perform all of its obligations thereunder."

80. Upon information and belief, every one of those representations were false when made, and CSDS and Mr. Sirimanne knew they were false when made. CSDS's conduct has demonstrated that it is not financially capable of consummating the transactions contemplated by the APA, and that it likely never has been, that it did not and does not have sufficient funds to pay the purchase price for each Aircraft, that is not ready, willing or able to consummate the sale in accordance with the APA and the HFS Sale Order, and that it has not accepted Delivery of the Aircraft in accordance with its obligations. It has also acted in the worst of faith, repeatedly making false assurances of performance, and, on information and belief, causing, directing, or procuring the disappearance of the Escrow Funds.

81. CSDS made those representations under penalty of perjury with the intent to induce Spirit—and the Bankruptcy Court—to rely on them, and thereby secure status as the winning bidder, secure Court approval of the HFS Sale Order, and secure numerous other concessions from the Debtors in connection with consummation of the HSF Sale Order and APA.

82. Spirit justifiably relied on CSDS's representations made under penalty of perjury by, among other things, supporting CSDS as the winning bidder, continuing to tender HFS Aircraft for Delivery, preparing and executing closing documentation, agreeing to price concessions and adjustments, refraining from remarketing the HFS Aircraft, and continuing to carry the financing costs on the HFS Aircraft.

83. Spirit has been injured by its reliance on CSDS's misrepresentations. Among other things, 19 of the 20 HFS Aircraft remain unsold, the debt that was to be paid down from their proceeds remains outstanding, Spirit has been forced to terminate the APA and commence remarketing the HFS Aircraft months after this Court approved the sale, the Debtors have been forced to divert significant time and estate resources to repeated, unsuccessful efforts to secure CSDS's performance, and have been deprived of the Escrow Funds that were intended to secure CSDS's performance. As a direct and proximate result of CSDS's fraudulent misrepresentations, Spirit has suffered damages in an amount to be proven at trial, including very material additional financing costs, delay in the monetization of the HFS Aircraft, net sale proceeds that will be millions of dollars less than had CSDS performed, and the costs of enforcement.

84. CSDS's conduct was intentional, willful, and wanton, and was directed at a debtor in possession and, through it, the Debtors' estates and creditors, warranting an award of punitive damages.

85. Spirit is entitled to compensatory damages in an amount to be proven at trial, punitive damages, and pre- and post-judgment interest.

## SIXTH CAUSE OF ACTION

## (Accounting)

86. Plaintiff repeats and realleges the preceding allegations as if more fully set forth herein.

87. The Escrow Funds were deposited pursuant to the Escrow Agreement, the Court-approved APA, and the HFS Sale Order.

88. The Escrow Funds were the subject of the Escrow Motion that is to be heard on October 14, 2026.

89. The Escrow Funds have gone missing from the Escrow Account.

90. Spirit lacks an adequate remedy at law to determine and recover the full amount of Escrow Funds and related amounts owed to it, and to identify the extent to which CSDS has received or obtained control over the Escrow Funds.

91. Spirit is entitled to a full and complete accounting of all Escrow Funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Spirit Airlines, LLC respectfully requests that the Court enter judgment in its favor and against Defendant CSDS Asset Management LLC as follows:

a) Judgment in favor of Plaintiff and against Defendant on all causes of action;

b) Judgment in favor of Plaintiff in the amount of $48,015,000 on account of the Escrow Funds missing from the Escrow Account;

c) expectation, compensatory, and/or punitive damages in amounts to be proven at trial;

d) an order for a complete accounting of any Escrow Funds or other property in the ownership, possession, custody, or control of CSDS as necessary to grant Sprit full relief and to enforce this Court’s equitable jurisdiction;

e) Pre- and post-judgment interest at the maximum rate permitted by law;

f) Reasonable attorneys' fees, costs, and expenses, to the extent permitted by the Agreements or applicable law; and

g) Such other and further relief as the Court deems just and proper.

Dated: October 14, 2026
New York, New York


DAVIS POLK & WARDWELL LLP

By: *<u>/s/ Ben S. Kaminetzky</u>*
Marshall S. Huebner
Ben S. Kaminetzky
Darren S. Klein
Christopher S. Robertson
Marc J. Tobak
Nicholas D'Angelo
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000

DEBEVOISE & PLIMPTON LLP
Jasmine Ball
Elie J. Worenklein
66 Hudson Boulevard East
New York, New York 10001
Tel.: (212) 909-6000

*Counsel to the Debtors and Debtors in Possession and Plaintiff Spirit Airlines, LLC*