**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
Telephone: +1 (212) 488-1200
Facsimile: +1 (212) 488-1220
Daniel J. Saval
Steven G. Kobre

-and-

201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: +1 (305) 967-6100
Fax: +1 (305) 967-6120
Michael C. Fasano (*pro hac vice* pending)

*Counsel to Gerald Glass*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11897 (SHL)<br><br>(Jointly Administered) |
| SPIRIT AIRLINES, LLC,<br>Plaintiff,<br><br>v.<br><br>CSDS ASSET MANAGEMENT LLC, ZED AEROCAPITAL LLC, WIKERT INVESTMENTS COMPANY LLC, SRIYANTHA BENEDICT SIRIMANNE, CHRISTOPHER KELLER, GERALD GLASS, JIM IACONO, ZANDER FUTERNICK, AND GARY LESNICK<br><br>Defendants. | Adversary Proceeding<br>No. 26-01102 (SHL) |

# **DEFENDANT GERALD GLASS'S MOTION TO DISSOLVE, CLARIFY, AND MODIFY TEMPORARY RESTRAINING ORDER**

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

## TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 4

A. The Transaction and the Escrow .......... 4

B. The Alleged Transfer of the Missing Funds to Zed and Wikert .......... 4

C. Spirit's Allegations Against Mr. Glass .......... 5

D. The TRO and the Amended TRO .......... 6

E. The Harm to Mr. Glass .......... 7

LEGAL STANDARD .......... 7

ARGUMENT .......... 8

I. THE COURT SHOULD DISSOLVE THE AMENDED TRO AS TO MR. GLASS .......... 8

A. *Grupo Mexicano* Bars a Prejudgment Freeze of Mr. Glass's Assets .......... 8

B. Spirit Cannot Show a Likelihood of Success Against Mr. Glass .......... 11

C. Spirit Has Not Shown Irreparable Harm .......... 19

D. The Balance of Equities and the Public Interest Favor Mr. Glass .......... 20

E. The Amended TRO Rests on Attorney Declarations, Not the Specific Facts Rule 65(b)(1) Requires .......... 21

II. ALTERNATIVELY, THE COURT SHOULD CLARIFY THE AMENDED TRO .......... 21

III. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE AMENDED TRO 23

IV. IF ANY RESTRAINT REMAINS, SPIRIT MUST POST SECURITY .......... 24

V. THE COURT SHOULD HEAR THIS MOTION ON TWO DAYS' NOTICE .......... 25

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Gordon*, 429 So. 2d 369 (Fla. Dist. Ct. App. 1983) ........ 17

*Bedoyan v. Samra*, 352 So. 3d 361 (Fla. Dist. Ct. App. 2022) ........ 19

*Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980) ........ 14

*Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087 (11th Cir. 2017) ........ 16

*Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43 (2006) ........ 16

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) ........ 13

*Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp. 2d 1310 (M.D. Fla. 2000) ........ 19

*Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511 (N.Y. 2012) ........ 17

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423 (1974) ........ 8, 21

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ........ 10, 17

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ........ passim

*Gucci Am. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ........ 18

*Haggiag v. Brown*, 728 F. Supp. 286 (S.D.N.Y. 1990) ........ 23

*Hillman Const. Corp. v. Wainer*, 636 So. 2d 576 (Fla. Dist. Ct. App. 1994) ........ 18

*In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001) ........ 14

*In re Lyondell Chem. Co.*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009) ........ 24

*In re Primera Energy, LLC*, No. 15-51396-CAG, 2015 WL 6556887 (Bankr. W.D. Tex. Oct. 28, 2015) ........ 9

*Joseph v. Chanin*, 940 So. 2d 483 (Fla. Dist. Ct. App. 2006) ........ 17

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990) ........ 19

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) ........ 15

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (N.Y. 1996) ........ 19

*Leadenhall Cap. Partners, LLP v. Advantage Cap. Holdings LLC*, 171 F.4th 155 (2d Cir. 2026) ........ passim

*NML Cap., Ltd. v. Republic of Argentina*, 2016 WL 836773 (S.D.N.Y. Mar. 2, 2016) ........ 7

*Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553 (2d Cir. 2011) ........ 24

*Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519 (N.Y. 1994) .......... 14

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381 (Fla. Dist. Ct. App. 1999) .......... 19

*Schmidt v. Lessard*, 414 U.S. 473 (1974) .......... 21

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59 (2d Cir. 2024) .......... 11

*Susquehanna Sec., LLC v. John Does 1–100*, No. 26-cv-5474 (AS), Dkt. 190 (S.D.N.Y. Sept. 14, 2026) .......... 3, 11

*Thys v. Fortis Sec. LLC*, 74 A.D.3d 546 (1st Dep't 2010) .......... 16

*Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568 (1st Dep't 2011) .......... 11

*Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994) (abrogated on other grounds) .......... 23

*Wexner v. First Manhattan Co.*, 902 F.2d 169 (2d Cir. 1990) .......... 15

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......... 7, 8, 19, 20

**Rules**

Fed. R. Bankr. P. 7012 .......... 1

Fed. R. Bankr. P. 7065 .......... 1, 7, 24, 25

Fed. R. Civ. P. 12 .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 2, 11

Fed. R. Civ. P. 65 .......... 7, 9

Fed. R. Civ. P. 65(b)(1) .......... 8, 21

Fed. R. Civ. P. 65(b)(2) .......... 8, 22

Fed. R. Civ. P. 65(b)(4) .......... passim

Fed. R. Civ. P. 65(c) .......... 24

Fed. R. Civ. P. 65(d) .......... 8, 21

Fed. R. Civ. P. 8 .......... 5

Fed. R. Civ. P. 9 .......... 5

Fed. R. Civ. P. 9(b) .......... 13, 15

Pursuant to Federal Rule of Civil Procedure ("Rule") 65(b)(4), as applicable by Federal Rule of Bankruptcy Procedure 7065, Defendant Gerald Glass ("**Mr. Glass**") moves this Court to dissolve the Order entered on October 21, 2026 (ECF No. 15) granting Plaintiff's Motion for an Order Amending and Clarifying the Temporary Restraining Order on Sources of Escrow Funds (the "**Amended TRO**," ECF No. 16), as it applies to Mr. Glass.[2] In the alternative, Mr. Glass respectfully requests that the Court modify the Amended TRO to ensure that it is construed as narrowly as warranted here and, should any restraint remain, to require Plaintiff Spirit Airlines, LLC ("**Spirit**") to post an appropriate security as warranted.

## PRELIMINARY STATEMENT

1. Even accepting the allegations in Spirit's Amended Complaint as true, Spirit's own account makes clear where its missing funds went: the escrow agent wired the approximately US $48 million to bank accounts held by Zed Aerocapital LLC ("**Zed**") and Wikert Investments Company LLC ("**Wikert**"). [Am. Compl., ECF No. 17 at 2.] Relevant here, Spirit fails to even allege that Mr. Glass received, held, or now holds, any of those funds. That deficiency alone is fatal to Spirit's claim that it is entitled to restrain Mr. Glass's assets as described in the Amended TRO.

2. Nevertheless, the Amended TRO reaches all assets Mr. Glass owns or controls. The Amended TRO was granted without notice to Mr. Glass, based on declarations from Spirit's counsel, and an allegation—made on information and belief—that he "[redacted]" the funding of the escrow. (Spirit Mot. ¶ 3.)

---

[2] Mr. Glass submits this Motion on an expedited basis to address the restraint now in force. He reserves all rights, defenses, and objections, including any available under Federal Rule of Civil Procedure 12, made applicable by Federal Rule of Bankruptcy Procedure 7012. Nothing in this Motion concedes the Court's personal jurisdiction over him or the sufficiency of any claim in the Amended Complaint.

3. Spirit attempts to paper over the gaps by using improper group allegations, describing the conduct of "Defendants" or the "Additional Parties," and it asks the Court to speculate as to Mr. Glass's knowledge and intent based on a single email—an email does not reflect Mr. Glass as an author or recipient, and which Spirit does not allege he saw. (Tobak Decl. Ex. E.). Indeed, the Amended Complaint does not plead sufficient facts against Mr. Glass to withstand scrutiny even under Rule 12(b)(6). A complaint that falls short of that line simply cannot support the extraordinary remedy of a TRO.

4. Nevertheless, the Amended TRO in effect froze every asset Mr. Glass owns or controls, personally and through his businesses—an extraordinary remedy, and one which even affects his innocent bystander employees—all to guard against an alleged harm that money can fully redress. (Glass Decl. ¶¶ 4.).

5. Mr. Glass is the principal owner of several businesses, and [redacted]. (*Id.* ¶ 7.). One of his businesses, EZVerify & Validate LLC ("**EZVerify**"), cannot now pay its employees, [redacted], and it may lose the ability to continue operating. Another, [redacted], is in jeopardy of incurring significant financial harm if it cannot conduct normal business operations (Glass Decl. ¶¶ 5–7.)

6. In seeking this extraordinary relief, Spirit did not disclose controlling authority that constitutionally restricted the Court from entering the TRO. As the U.S. Supreme Court has long made clear, federal courts cannot issue a prejudgment freeze of assets where there is neither a lien against such assets or nor any equitable interest, and where such a freeze would serve only to secure a potential money judgment. *See, e.g.*, *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999); *Leadenhall Cap. Partners, LLP v. Advantage Cap. Holdings LLC*, 171 F.4th 155, 162 (2d Cir. 2026) ("The point is simply that where a creditor claims

no rights in a debtor's assets, neither law nor equity shall operate to grant such rights pre-judgment.").

7. *Grupo Mexicano* forecloses the restraint that Spirit invited the Court to implement in the Amended TRO. Here, Spirit has not asserted that there is a lien relevant to Mr. Glass's property, nor has Spirit identified a single dollar of his that it claims can be traced to the alleged misconduct. Spirit seeks only standard monetary relief from Mr. Glass. (Am. Compl. ¶ 1, Prayer for Relief ¶ (b)). Even if Spirit proved every allegation against Mr. Glass, the Court's general equitable powers still would not permit it to freeze Mr. Glass's general assets merely to ensure payment of the resulting judgment.

8. Spirit's request for relief fails for another reason: it cannot satisfy the standard for a preliminary injunction. Far from establishing the requisite "likelihood of success," Spirit offers the sparsest of allegations against Mr. Glass, and even those allegations relate only to his purported role in facilitating a deposit ***into*** an escrow account. Spirit has not alleged he withdrew or diverted funds from it. Spirit's allegation that he had any hand in the withdrawals are made "on information and belief," not on any stated fact. To the extent Spirit argues that Mr. Glass misled Spirit about CSDS Asset Management's use of loaned proceeds to fund the escrow account—and, notably, Spirit did not allege Mr. Glass knew the use of loaned proceeds to be prohibited by the relevant transaction documents—the email cited to implicate Mr. Glass not only was received by Spirit's agents, but clearly described the wire as a "[redacted]."

9. Nor can Spirit establish irreparable harm from a conventional claim for monetary relief, particularly when it has already sought restraints on accounts belonging to others that allegedly received the missing funds. *See Susquehanna Sec., LLC v. John Does 1–100*, No. 26-cv-5474 (AS), Dkt. 190, at 5 (S.D.N.Y. Sept. 14, 2026) ("*Susquehanna*") (denying preliminary

injunction and attachment because a chance that funds might be dissipated is not a clear showing of irreparable harm).

10. In sum, the harm the Amended TRO inflicts on Mr. Glass and his businesses outweighs any interest Spirit has in restraining someone it does not allege holds its funds. The Amended TRO should be dissolved. Mr. Glass requests that a hearing on his motion to dissolve the Amended TRO take place within two days. *See* Rule 65(b)(4).

## FACTUAL BACKGROUND

### A. The Transaction and the Escrow

11. On February 9, 2026, Spirit and CSDS Asset Management, LLC ("**CSDS**") entered into an Aircraft Sale and Purchase Agreement (the "**APA**") for twenty aircraft and an Escrow Agreement (the "**Escrow Agreement**") requiring CSDS to deposit US $53,350,000 with an escrow agent, McAfee & Taft A Professional Corporation (the "**Escrow Agent**"), by February 12, 2026. (Am. Compl. ¶¶ 1–2, 33; Second Tobak Decl. Ex. F (MT000001–08).) This Court approved the sale on April 24, 2026. (Am. Compl. ¶ 3; Spirit Mot. ¶ 23.)[3] Spirit alleges that Zed and Wikert, not CSDS, supplied the funds for the transaction in February 2026. Spirit fails to allege how that action is wrongful or constitutes any breach.

### B. The Alleged Transfer of the Missing Funds to Zed and Wikert

12. Spirit alleges that the Escrow Agent returned the missing funds to the entities that supplied it. On [redacted], the Escrow Agent wired [redacted] to Zed's account at Seacoast National Bank and [redacted] to Wikert's account at Amarillo National Bank. On [redacted]

[3] Spirit's Amended Adversary Complaint (the "**Amended Complaint**" or "**Am. Compl.**") [ECF No. 17] and its Motion for an Order Amending and Clarifying the Temporary Restraining Order ("**Spirit Mot.**") [ECF No. 16] detail subsequent developments, together with the Declaration of Marc J. Tobak [ECF No. 18] ("**Tobak Decl.**") and the Second Declaration of Marc J. Tobak [ECF No. 19] ("**Second Tobak Decl.**" and, with the Tobak Decl., the "**Tobak Declarations**").

[redacted], it wired the remaining [redacted] to the same Zed account. (Am. Compl. ¶ 79; Spirit Mot. ¶ 20; Tobak Decl. Exs. B (MT000043–45), C (MT000050), D (MT000046–48).) Spirit's motion calls Zed's and Wikert's accounts "the bank accounts that we now know the missing Escrow Funds were transferred to." (Spirit Mot. ¶ 4.) Mr. Glass appears on none of those wire records, and nothing in Spirit's Amended Complaint or supporting exhibits indicate that he is in possession or control of the missing funds. (*See* Tobak Decl. Exs. A–E; Second Tobak Decl. Exs. F–G.). Moreover, while the Amended Complaint speculates that Mr. Glass had something to do with procuring the funds from the escrow account, it provides no underlying factual basis for those claims as required by Rule 8, much less the heightened standard set out for claims sounding in fraud under Rule 9.

**C. Spirit's Allegations Against Mr. Glass**

13. Spirit alleges that Mr. Glass is CEO of EZVerify & Validate LLC and an officer of Gerald G. Glass, P.A., both Florida corporations. (Am. Compl. ¶ 14.) Spirit's motion alleges that Mr. Glass "[redacted]" and "[redacted]." (Spirit Mot. ¶ 3.)

14. The involvement of Mr. Glass described in the Amended Complaint and Spirit's motion is limited.

15. *First*, a February 14, 2026, email from CSDS's then-counsel (Paul Steven Singerman) to certain of the Debtors' professionals reported that Mr. Glass "caused to be initiated" a US $7,900,000 wire and "has taken extraordinary measures to make this happen and to assuage any concerns regarding the bona fides of the Stalking Horse Buyer." (Tobak Decl. Ex. E.) Mr. Glass did not write these statements and is not on the email chain. The email contains no statement or representation *by Mr. Glass himself* regarding CSDS.

16. The email attached the wire record, which names Zed as originator, shows that Zed's Alexander Futernick created the wire and Gary Lesnik authorized it, and describes it as a "[redacted]." (*Id.*) Spirit's own personnel and counsel were among the email's addressees. (*Id.*) Spirit notes that the money "did not come from Mr. Glass, but from Zed." (Spirit Mot. ¶ 17; Am. Compl. ¶ 37.)

17. *Second*, Spirit alleges "[o]n information and belief" that Mr. Glass was "directly involved in assisting CSDS secure funding from Zed and Wikert, and in transferring the fronted funds back to Zed and Wikert." (Am. Compl. ¶ 45; *see also id.* ¶¶ 131, 139.).

18. *Third*, Spirit acknowledges that it does not know the terms of any arrangement between CSDS and Zed or Wikert about the funds (Spirit Mot. ¶¶ 16–17), but speculates that there "appear to have been some agreements and arrangements unknown to the Debtors" involving "Wikert, Glass, and CSDS." (*Id.* ¶ 25.)

19. The Amended Complaint names Mr. Glass in five of its eight counts: conversion (Count 3), unjust enrichment (Count 4), accounting (Count 6), tortious interference with contract (Count 7), and aiding and abetting fraudulent misrepresentation (Count 8). (Am. Compl. ¶¶ 100–113, 123–143.)

**D. The TRO and the Amended TRO**

20. On October 14, 2026, following an *ex parte* hearing, the Court entered a temporary restraining order against CSDS (the "**TRO**") barring CSDS and those acting in concert with it from moving "any assets, property, or funds within the ownership, possession, custody, or control of CSDS" and from moving a specified aircraft. (Spirit Mot. ¶¶ 13–14 (quoting TRO ¶¶ 2–3).)

21. The Court amended that TRO on October 21, 2026. (ECF No. 15.) The Amended TRO now restrains Mr. Glass from transferring, withdrawing, utilizing, encumbering, disbursing, secreting, or moving any assets, property, or funds within his ownership, possession, custody, or

control. (Amended TRO ¶ 3.) Spirit's motion acknowledges that the relief could be narrowed (Spirit Mot. ¶ 39), asks the Court to excuse Spirit from posting any bond (*id.* ¶ 40), and offers one unsubstantiated reason for proceeding without notice: that notice "would simply provide perverse incentives to transfer additional assets." (*Id.* ¶ 37.)

**E. The Harm to Mr. Glass**

22. Mr. Glass is the principal owner of several businesses, including EZVerify, which is based in Fort Lauderdale and [redacted], and [redacted]. (Glass Decl. ¶¶ 5-6.) EZVerify has an active office, full-time employees on payroll, and regular obligations for [redacted]. (*Id.* ¶ 5.) It cannot pay any of them now. (*Id.*) As noted, Mr. Glass is [redacted]. (*Id.* ¶ 7.) If the Amended TRO remains in place, EZVerify may lose the ability to continue conducting business and its employees will go unpaid, and [redacted]. (*Id.* ¶¶ 6.).

**<u>LEGAL STANDARD</u>**

23. Federal Rule of Bankruptcy Procedure 7065 makes Rule 65 applicable in adversary proceedings. Under Rule 65(b)(4), a party subject to a temporary restraining order issued without notice may move to dissolve or modify the order on two days' notice, or on shorter notice set by the court. The court must then "hear and decide the motion as promptly as justice requires." Fed. R. Civ. P. 65(b)(4).

24. A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A federal court has "wide discretion" to vacate or modify injunctions. *NML Cap., Ltd. v. Republic of Argentina*, 2016 WL 836773, at *6 (S.D.N.Y. Mar. 2, 2016).

25. A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

26. A court may issue a temporary restraining order without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the movant's attorney certifies in writing the reasons notice should not be required. Fed. R. Civ. P. 65(b)(1). Such an order may last no more than 14 days unless the court extends it for good cause or the adverse party consents. Fed. R. Civ. P. 65(b)(2). *Ex parte* restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm," and should remain in effect only "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 439 (1974).

27. Every restraining order must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C).

## ARGUMENT

### I. THE COURT SHOULD DISSOLVE THE AMENDED TRO AS TO MR. GLASS

#### A. *Grupo Mexicano* Bars a Prejudgment Freeze of Mr. Glass's Assets

28. The Amended TRO fails at the threshold because the Court cannot order the relief Spirit sought.

29. In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), the Supreme Court held that federal courts do not have the inherent authority under

Rule 65 to issue a preliminary injunction enjoining a defendant from transferring assets in which no lien or equitable interest is claimed in order to secure an eventual money judgment. The district court in that case had issued such an order after finding that the defendant was "at risk of insolvency if not already insolvent" and had plans to use its only substantial asset to satisfy other creditors. *Id.* at 312. The Supreme Court held that the district court lacked such authority, reasoning that the availability of injunctive relief under Rule 65 depends on traditional principles of equity jurisdiction, and that such a remedy in aid of a claim for legal damages was historically unavailable to courts of equity. *Id.* at 318-319. In short, the Supreme Court "limited the availability of a preliminary injunction in federal court to freezing only those assets where a lien or equitable interest in the assets is claimed." *In re Primera Energy, LLC*, No. 15-51396-CAG, 2015 WL 6556887, at *3 (Bankr. W.D. Tex. Oct. 28, 2015).

30. The Second Circuit recently reaffirmed this reasoning of *Grupo Mexicano* in *Leadenhall Cap. Partners, LLP*, 171 F.4th at 161. The Second Circuit vacated the freezing order against the defendant guarantors in *Leadenhall* because the plaintiff lenders had only a contractual right against the guarantors; in other words, the plaintiff lenders had neither a lien nor an equitable interest in the guarantors' assets. *Id.* at 161–63. The Second Circuit found that no equitable interests were implicated, because the plaintiff lenders (i) sought money damages with a general interest in receiving compensation; and (ii) did not identify any property "belonging in good conscience to the plaintiff[s]" that could "clearly be traced to particular funds or property in the defendant[s'] possession." *Id.* The Second Circuit also rejected the argument that the plaintiff lenders had an equitable interest because they sought "specific performance": the specific performance sought by the plaintiffs in *Leadenhall* was in essence "ensuring the legal debt can be paid," and therefore failed to establish a cognizable equitable interest. *Id.* at 165.

31. The same principles from *Grupo Mexicano* and *Leadenhall* control here. Spirit claims no lien on any asset of Mr. Glass's, and identifies no property of his in which it claims an equitable interest. Spirit's own narrative places the missing funds in Zed's and Wikert's accounts, not Mr. Glass's: there are no particular funds or property in Mr. Glass's possession or custody traceable to the misconduct alleged in the Amended Complaint. Spirit's allegations, such as that Mr. Glass "[redacted]" the escrow funding (Spirit Mot. ¶ 3), at most support a claim for future damages.

32. While a preliminary injunction may restrain fungible assets (such as money) without identifying particular property, such restraint is allowed only "where the plaintiff is pursuing a claim for final equitable relief, and the preliminary injunction is ancillary to the final relief." *Leadenhall Cap. Partners, LLP*, 171 F.4th at 164. Here, the final relief Spirit seeks—at least as against Mr. Glass—unquestionably is a money judgment. (Am. Compl. ¶¶ 107, 113 (seeking return of the "Withheld Escrow Funds," which are not alleged to have been acquired by Mr. Glass); *see also id.* ¶¶ 22-36).

33. Spirit's labels do not change the analysis. The Second Circuit held that "[t]he propriety of a preliminary injunction in relation to a court's equitable powers is determined by the nature of the final relief sought." *Leadenhall Cap. Partners, LLP*, 171 F.4th at 164. By way of example, restitution is "not an exclusively equitable remedy"; it lies in equity *only* where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 165 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 215 (2002)). Likewise, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* (quoting

*Knudson*, 534 U.S. at 214). Here, Spirit seeks to impose personal liability on Mr. Glass for funds that, on Spirit's own account, were transferred to Zed and Wikert. (Am. Compl. ¶ 79.) The same analysis holds regardless of whether the Court is analyzing Spirit's contract, tortious interference, or aiding-and-abetting claims.

34. The same is true with respect to the request for an accounting. There, Spirit simply asks the Court to determine "the extent to which Defendants have received or obtained control over the Escrow Funds." (Am. Compl. ¶ 127.) But as to Mr. Glass, there is no allegation that he received or obtained control over such funds. Tossing in a request for an "accounting" does not transform Spirit's claims into request for equitable relief, any more than characterizing collection of a debt as "specific performance" did in *Leadenhall*. *See* 171 F.4th at 165. New York law also grants an accounting only to a claimant who "has no adequate remedy at law," *Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568 (1st Dep't 2011), which Spirit has failed to show.

**B. Spirit Cannot Show a Likelihood of Success Against Mr. Glass**

35. The Amended TRO must also be dissolved because Spirit has not demonstrated a likelihood of success on any claim against Mr. Glass. As a preliminary matter, Spirit does not even argue that it would succeed against Mr. Glass for the vast majority of its claims; instead, as it relates to Mr. Glass specifically, Spirit offered only a single argument relating to its aiding and abetting fraud count. (Spirit Mot. ¶ 34 (making no argument that Mr. Glass is likely liable for conversion, unjust enrichment, an accounting, or tortious interference).) But a movant seeking preliminary injunctive relief must carry its burden "by a clear showing." *Susquehanna*, Dkt. 190 at 1 (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024)). As Spirit acknowledges, this means a "better than fifty percent" probability of success, Spirit Mot. ¶ 31—far more than a complaint requires to survive a motion to dismiss under

Rule 12(b)(6)'s "plausibility" standard. *See Susquehanna*, Dkt. 190 at 8. For all of the reasons set forth below, Spirit is well short of that bar.

**1. Spirit Fails to Offer Sufficient Facts Against Mr. Glass**

36. Stripped of labels and group allegations, the Spirit has alleged these facts, and only these facts, about Mr. Glass:

- He is CEO of EZVerify & Validate LLC and an officer of Gerald G. Glass, P.A. (Am. Compl. ¶ 14.)
- On February 14, 2026, CSDS's then-counsel wrote to Spirit's personnel and professionals that Mr. Glass had "caused to be initiated" a US $7,900,000 wire and had "taken extraordinary measures to make this happen and to assuage any concerns regarding the bona fides of the Stalking Horse Buyer." (Am. Compl. ¶ 37; Tobak Decl. Ex. E.)
- The wire did not come from Mr. Glass. Zed originated it, Zed's Alexander Futernick created it, and Zed's Gary Lesnik authorized it. (Am. Compl. ¶ 37; Spirit Mot. ¶ 17; Tobak Decl. Ex. E.)
- From that email, Spirit characterizes Mr. Glass as "lending his name to the $7,900,000 transfer and vouching for the 'bona fides' of CSDS." (Am. Compl. ¶ 140(b).)

37. All other allegations regarding Mr. Glass are pleaded on information and belief, in conclusory terms, or about a group of collective defendants:

- On information and belief, Mr. Glass was "directly involved in assisting CSDS secure funding from Zed and Wikert, and in transferring the fronted funds back to Zed and Wikert." (Am. Compl. ¶ 45; *see also id.* ¶¶ 131, 139.)
- On information and belief, "CSDS, Zed, Wikert, their principals, and Mr. Glass acted in concert." (*Id.* ¶ 80.)
- "[T]here also appear to have been agreements and arrangements unknown to the Debtors between, among others, Wikert, Mr. Glass, and CSDS and/or Mr. Sirimanne." (*Id.* ¶ 52; *see* Spirit Mot. ¶ 25.)
- "Zed, Wikert, Iacono, and Glass caused or procured transfers of the entirety" of the escrow funds. (Am. Compl. ¶ 132.) Spirit identifies no act by Mr. Glass. Its own exhibits show that the Escrow Agent originated each wire. (Tobak Decl. Exs. B–D.)

38. From this scant narrative, Spirit asks the Court to conclude that Mr. Glass had "actual knowledge of the fraud" (Am. Compl. ¶ 138); "substantially assisted" the fraud (*id.* ¶ 140);

"caused or procured" CSDS's breaches and the Escrow Agent's [redacted] wires (*id.* ¶ 132); "exercised unauthorized dominion and control over the Escrow Funds" (*id.* ¶ 105); and was "enriched" by these funds (*id.* ¶ 110). As the above makes clear, there is a vast distance between the actual facts and the conclusions Spirit asks this Court to draw. Notably, Spirit does not allege that Mr. Glass:

- received, held, or controlled any of the escrow funds, or any account that received them;
- signed, or is a party to, the APA, the Escrow Agreement, the Zed Loan Agreement, or the Zed Escrow Agreement;
- wrote or reviewed Mr. Sirimanne's April 20 declaration;
- made any statement on which Spirit relied (the reliance Spirit pleads is on "CSDS's representations made under penalty of perjury," Am. Compl. ¶ 119);
- received any fee or payment, although Spirit alleges that [redacted] (Spirit Mot. ¶ 18; Am. Compl. ¶ 42);
- was party to any arrangement whose date, parties, terms, or purpose Spirit can identify (Spirit Mot. ¶¶ 16–17, 25 (terms "not known")); or
- has moved, hidden, or transferred any asset, or cannot satisfy a judgment.

39. Spirit's own exhibit weakens the inference further. The February 14 email it cites went to Spirit's personnel and counsel and attached a wire record that names Zed as originator, describes the wire as a "[redacted]," and gives its purpose as "[redacted]." (Tobak Decl. Ex. E.)

**2. Spirit Fills the Gap with Group Pleading**

40. Where Spirit cannot allege facts in its Amended Complaint, it falls back on group pleading. (*See e.g.*, Am. Compl. ¶¶ 2, 44, 56, 80, 105, 110). Indeed, three counts run against "All Defendants." (*Id.* ¶¶ 100, 108, 123.) Spirit's motion does the same, treating Mr. Glass as one of those who, "at a minimum," "knowingly participated in CSDS's transactions with the Debtors." (Spirit Mot. ¶ 34.)

41. Group pleading is inadequate for claims that sound in fraud. Where multiple defendants are asked to respond to allegations of fraud, "the complaint should inform each

defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see also* Fed. R. Civ. P. 9(b). Count 8, the aiding and abetting count, sounds in fraud, yet the Amended Complaint neglects to identify a single act by Mr. Glass beyond what someone else wrote about him in a February email. A complaint that pleads this little about Mr. Glass would not survive a motion to dismiss, and certainly cannot carry the more demanding burden of a clear showing of likely success, much less justify an order that freezes everything he owns.

**3. Spirit's Claims Fail Under Any Likely Applicable State Law**

42. The Amended Complaint pleads no governing law for the claims against Mr. Glass, and Spirit's motion applies none.[4] A bankruptcy court deciding state-law claims generally applies the choice-of-law rules of the forum state when no compelling federal interest is at stake. *See In re Gaston & Snow*, 243 F.3d 599, 605-07 (2d Cir. 2001). New York applies interest analysis, and for rules that regulate conduct, "the law of the jurisdiction where the tort occurred will generally apply." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (N.Y. 1994). Based upon the facts in the Amended Complaint, Florida would appear to be the most likely jurisdiction: EZVerify is based in Fort Lauderdale (Glass Decl. ¶ 5), Mr. Glass executed his declaration in Davie, Florida (*id.* at 4), and Spirit alleges that its own mailing address is in Florida, and that Mr. Glass's companies are Florida corporations (Am. Compl. ¶¶ 1 n.1, 14).

43. A Florida court would reach the same result, because Florida applies the law of the state with the most significant relationship to the occurrence and the parties. *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

[4] Other documents Spirit submitted point to other states for contract law: the Escrow Terms select [redacted] law and the Loan Agreement selects [redacted] law. (Second Tobak Decl. Ex. F § 10; *id.* Ex. G (MT000014).).

44. The Court need not decide the question because each claim fails under both bodies of law. The sections below address New York law first and Florida law second.

**4. Aiding and Abetting Fraud**

45. Aiding and abetting fraud under New York law requires a fraud, the defendant's knowledge of it, and substantial assistance in its commission. *See Krys v. Pigott*, 749 F.3d 117, 127–28 (2d Cir. 2014). The knowledge must be actual. *See id.* at 127. Spirit pleads in the alternative that Mr. Glass "knew or had reason to know" that the Sale Motion rested on a declaration that did not disclose his role (Am. Compl. ¶ 139). But "had reason to know" describes constructive knowledge, which does not suffice. *Krys*, 749 F.3d at 127. The only fact Spirit offers for "actual knowledge" as to Mr. Glass is that he "knew that the $7,900,000 transfer" CSDS reported "in fact came from Zed." (*Id.* ¶ 139.) Even if true, this says nothing about whether Mr. Glass had any knowledge or intent to defraud, or whether he participated in a scheme.

46. The underlying fraud, as Spirit tells it, is Mr. Sirimanne's April 20, 2026, declaration. (Spirit Mot. ¶¶ 21–25.) Spirit does not allege that Mr. Glass wrote or reviewed that declaration, or knew what the Escrow Agent did with the funds in [redacted]. It alleges *only* that Mr. Glass "knew or had reason to know" that the Sale Motion rested on a declaration that did not disclose his role (Am. Compl. ¶ 139). Nothing in Spirit's exhibits connects Mr. Glass to the [redacted] wires, which the Escrow Agent sent to Zed and Wikert. Spirit's allegation that Mr. Glass was "directly involved . . . in transferring the fronted funds back" rests on information and belief, not fact. A fraud-based claim pleaded on information and belief must "adduce specific facts supporting a strong inference of fraud." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *see also* Fed. R. Civ. P. 9(b).

47. The only fact Spirit offers is the February 14 email, which reports, through CSDS's counsel, that Mr. Glass caused a wire to be initiated and vouched for the buyer's good faith. Even

accepting that as true, the email does not show that he knew of any fraud: to the contrary, the funds were deposited, and the Escrow Agent confirmed receipt. (Am. Compl. ¶¶ 35, 38, 40.) Spirit also alleges that the participants concealed Zed's role from the Debtors. (*Id.* ¶¶ 41, 140(d).) Yet the February 14 email—the very document upon which Spirit relies for Mr. Glass's role—openly disclosed Zed's name and the words "[redacted]" on February 14. (Tobak Decl. Ex. E.) If anything, this is the opposite of concealment.

48. Florida courts have applied the same three elements for aiding and abetting fraud: an underlying fraud, the defendant's knowledge of it, and substantial assistance in its commission. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097–98 (11th Cir. 2017). Knowledge is "the crucial element." *Id.* Even accepting Spirit's allegations as true, it has not alleged any fact establishing such knowledge for Mr. Glass.

**5. Conversion**

49. Conversion under New York law requires the plaintiff's possessory right in property and the defendant's dominion over it in derogation of that right. *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006). When the property is money, the plaintiff must identify a "specific, identifiable fund" that the defendant was obliged "to return or otherwise treat in a particular manner." *Thys v. Fortis Sec. LLC*, 74 A.D.3d 546, 547 (1st Dep't 2010) (internal quotation marks omitted).

50. Spirit says the escrow funds were a "specific, identifiable, and segregated fund held by the Escrow Agent." (Am. Compl. ¶ 101.) Even if so, Spirit has not alleged that Mr. Glass held those funds. Spirit alleges that he "caus[ed] or procur[ed]" the disbursements (*id.* ¶ 105), but its exhibits show that the Escrow Agent sent the money to Zed and Wikert, and its motion argues that Zed and Wikert are liable for conversion because "[redacted]." (Spirit Mot. ¶ 34.) Spirit does not argue that Mr. Glass received anything.

51. Florida law is the same. Money can be the subject of conversion only "if the specific money in question can be identified." *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. Dist. Ct. App. 2006) (quotation omitted); *Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. Dist. Ct. App. 1983). Spirit has no such allegation as to Mr. Glass.

**6. Unjust Enrichment and Accounting**

52. Unjust enrichment requires that "the other party was enriched," "at that party's expense," and that it is "against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (quotation omitted). Spirit alleges that Mr. Glass was enriched "by retention of the benefit of, and control over, the Escrow Funds" (Am. Compl. ¶ 110), but it pleads no fact showing that he received or retained any of them, and its specific allegations place the funds with Zed and Wikert. (*Id.* ¶¶ 3, 6, 46, 79; Spirit Mot. ¶¶ 4, 17.). The accounting claim fails for the reasons described above: Spirit has no ability to learn from Mr. Glass where these specific funds went, and it has an adequate remedy at law.

53. Spirit cannot treat unjust enrichment as equitable by definition, because it is not. New York describes the theory as one that "lies as a quasi-contract claim." *Georgia Malone*, 19 N.Y.3d at 516 (quotation omitted). But whether relief on such a claim is legal or equitable for purposes of *Grupo Mexicano* is a federal question that turns on the relief sought, not on the state-law label. *Leadenhall*, 171 F.4th at 158, n.3, 164–65. Restitution is "not an exclusively equitable remedy." *Id.* It is legal when the plaintiff seeks money to pay for a benefit conferred, and equitable only where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession," ordinarily through "a constructive trust or an equitable lien." *Id.* at 163–65 (quoting *Knudson*, 534 U.S. at 212–15).

54. Spirit pleads "restitution and disgorgement" (Am. Compl. ¶ 113), but it seeks no constructive trust and no equitable lien on any identified fund. Its prayer asks for a money judgment of US $48,015,000 and damages (*id.*, Prayer for Relief ¶¶ (b)–(c)), and it pleads Count 4 only in the alternative to its contract claims against CSDS (*id.* ¶ 109). On those pleadings, Count 4 seeks legal restitution, and *Grupo Mexicano* bars freezing assets to secure it.

55. Even if Count 4 were equitable, the equitable relief would be restitution and disgorgement of the Escrow Funds themselves. That relief cannot reach Mr. Glass. Equitable restitution runs against particular funds "in the defendant's possession." *Leadenhall*, 171 F.4th at 163 (slip op. at 23). Spirit pleads no fact that Mr. Glass possesses or controls the Escrow Funds. Its specific allegations put them in accounts held by Zed and Wikert (Am. Compl. ¶ 79; Spirit Mot. ¶¶ 4, 17), which the Amended TRO already restrains (Amended TRO ¶ 4). Its collective allegation that "Defendants" retained them (Am. Compl. ¶ 110) is a conclusion that its own specific allegations contradict. And a preliminary injunction may restrain assets only "where the plaintiff is pursuing a claim for final equitable relief, and the preliminary injunction is ancillary to the final relief." *Leadenhall*, 171 F.4th at 164 (quoting *Gucci Am. v. Weixing Li*, 768 F.3d at 131). No final equitable relief against Mr. Glass's general assets is sought, so the Court has no power to freeze them, whatever label Count 4 carries.

56. Florida requires that the plaintiff confer a benefit on the defendant, that the defendant voluntarily accept and retain it, and that retaining the benefit without compensating the plaintiff would be inequitable. *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994). Spirit does not allege that it conferred any benefit on Mr. Glass. By its own account, its money went to Zed and Wikert. An equitable accounting under Florida law likewise requires an inadequate remedy at law, and rests on a fiduciary or confidential relationship or on complicated

transactions. *See Bedoyan v. Samra*, 352 So. 3d 361, 365 (Fla. Dist. Ct. App. 2022); *Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000). Spirit pleads no fiduciary relationship with Mr. Glass.

#### 7. Tortious Interference with Contract

57. Tortious interference requires a valid contract, the defendant's knowledge of it, the defendant's intentional procurement of the third party's breach without justification, an actual breach, and damages. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996). Spirit alleges that Mr. Glass "caused or procured" the transfers out of escrow (Am. Compl. ¶ 132), but it pleads no fact showing what he did, and it admits that it does not know what arrangements existed. (Spirit Mot. ¶¶ 16–17, 25.) An allegation that someone "caused or procured" a transfer, unaccompanied by facts, does not show the intentional procurement of a breach. Florida law requires the same showing: a business relationship, the defendant's knowledge of it, "an intentional and unjustified interference" with it, and resulting damage. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 385 (Fla. Dist. Ct. App. 1999). Regardless of which law applies, then, Spirit has failed to show a likelihood of success on the merits.

### C. Spirit Has Not Shown Irreparable Harm

58. Irreparable injury "is one that cannot be redressed through a monetary award," and "[w]here money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). Spirit must show that irreparable harm is *likely*—the mere "possibility" of irreparable harm will not suffice. *See Winter*, 555 U.S. at 22.

59. Spirit's claim against Mr. Glass is a claim for US $48,015,000, and a money judgment unquestionably would redress that alleged injury. Spirit offers one reason to doubt that a judgment would be collectible: an inference that, without a freeze, the additional parties would

have "perverse incentives to transfer additional assets." (Spirit Mot. ¶ 37.) That inference would apply to every defendant in every case. Here, Spirit does not allege that Mr. Glass has moved, hidden, or transferred any asset. It alleges only that he is an officer of two Florida companies. (Am. Compl. ¶ 14.)

60. A restraining order is also the wrong instrument. It exists to preserve what the Court may later award. Spirit has already obtained an order restraining the accounts in which, by its own account, the escrow funds sit. (Amended TRO ¶ 4.) A further restraint on Mr. Glass's other assets preserves nothing to which Spirit would be entitled. It secures only a future money judgment, which is the very relief *Grupo Mexicano* places beyond the Court's equitable power.

**D. The Balance of Equities and the Public Interest Favor Mr. Glass**

61. A court "must balance the competing claims of injury" and consider "the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation omitted). On Mr. Glass's side of the scale, the Amended TRO stops EZVerify from paying its employees and other obligations, threatens [redacted], and leaves Mr. Glass unable to pay his household's expenses. (Glass Decl. ¶¶ 5-8.) On Spirit's side, the record shows no harm that a money judgment could not repair.

62. Spirit answers that any harm to the additional parties is "a problem of their own making." (Spirit Mot. ¶ 38.) This flippant answer cannot withstand scrutiny, and indeed, even Spirit concedes that Mr. Glass is a natural person who "may be required to spend assets," and therefore it is "willing to narrow the relief sought" if he provides "an accounting and security." (*Id.* ¶ 39.) Both the balance of equities and the public interest favor dissolution of the Amended TRO as to Mr. Glass.

### E. The Amended TRO Rests on Attorney Declarations, Not the Specific Facts Rule 65(b)(1) Requires

63. A restraining order without notice requires "specific facts in an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A). Spirit supported its motion with declarations from outside counsel that authenticate documents and with an unverified complaint. Nothing in those papers shows that Mr. Glass has dissipated, or is about to dissipate, anything. Spirit's reason for proceeding without notice was its unsupported claim that notice "would simply provide perverse incentives." (Spirit Mot. ¶ 37.) That generalization does not carry Spirit's burden: An *ex parte* order "should be restricted to serving [its] underlying purpose of preserving the status quo," *Granny Goose*, 415 U.S. at 439, and the Amended TRO goes far beyond.

## II. <u>ALTERNATIVELY, THE COURT SHOULD CLARIFY THE AMENDED TRO</u>

64. If the Court does not dissolve the Amended TRO, it should clarify the order. Rule 65(d) requires every restraining order to "state its terms specifically." The rule "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders," and "the specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam).

65. As Spirit proposed it, the Amended TRO is unclear in four respects.

66. *First*, it restrains "any assets, property, or funds within [Mr. Glass's] ownership, possession, custody, or control." The phrase is not limited to the escrow funds, to property traceable to them, or to any identified account. It does not say whether it reaches income earned after the order, assets held jointly or in a representative capacity, or property in which Mr. Glass holds a partial interest.

67. *Second*, it uses verbs that describe ordinary life. Mr. Glass cannot tell whether paying an invoice, meeting payroll, remitting taxes, paying rent, or paying counsel is

"transferring," "utilizing," or "disbursing" an asset. The uncertainty has consequences now: EZVerify currently cannot pay its obligations, and Mr. Glass understands the order to restrict even household expenses. (Glass Decl. ¶¶ 4–5, 8.)

68. *Third*, it reaches far beyond Mr. Glass. Spirit's definition covers his "affiliates, agents, assigns, successors, employees, representatives, parents, holding companies, or other persons acting, or authorized to act, on any of their behalf." (Spirit Mot. at 3 n.4.) Mr. Glass is CEO of EZVerify and an officer of Gerald G. Glass, P.A. (Am. Compl. ¶ 14.) Neither of those entities is a defendant in this case, yet the Amended TRO now binds those entities and, potentially, their officers, agents, servants, employees, and attorneys, and persons in active concert with them.

69. *Fourth*, banks cannot reasonably and consistently implement this TRO, despite Spirit's argument that the Amended TRO was intended to provide "clarity to banks across the country that will need to implement it." (Spirit Mot. ¶ 29.) Without clarification, a bank reading the order may restrain every account associated with Mr. Glass or any business he is connected with, irrespective of any connection to this case.

70. Thus, in the event the Court does not dissolve the Amended TRO, Mr. Glass asks the Court to clarify that the Amended TRO:

(a) restrains only the escrow funds, and property traceable to them, that are in Mr. Glass's own possession, custody, or control;

(b) does not bind EZVerify & Validate LLC, Gerald G. Glass, P.A., or any other non-party business entity, or its employees, vendors, or banks;

(c) does not prohibit payments in the ordinary course of business or for personal living expenses; and

(d) states the date and hour of its issuance and its expiration, as Rule 65(b)(2) requires.

## III. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE AMENDED TRO

71. If the Court maintains any restraint, it should modify the Amended TRO so that Mr. Glass's businesses can operate and he can pay his bills. Rule 65(b)(4) authorizes modification on two days' notice. Spirit has already conceded that a narrower order is appropriate: it acknowledges that Mr. Glass is a natural person who "may be required to spend assets" for daily needs and says it is "willing to narrow the relief sought." (Spirit Mot. ¶ 39.) The same principle extends to the businesses he runs. An order that preserves the status quo does not prevent an operating company from paying its vendors and employees.

72. The scope of any remaining restraint must also fit the harm. Injunctive relief "should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (abrogated on other grounds). An order that freezes a defendant's operating businesses is not tailored. *See Haggiag v. Brown*, 728 F. Supp. 286, 291 (S.D.N.Y. 1990) (freezing assets would "in effect, freeze the operations" of the business and prevent payment of bills and salaries).

73. In the event the Court does not dissolve the Amended TRO, the Court should permit Mr. Glass and the businesses he owns or manages, without further order, to:

(a) pay vendors, employees, rent, taxes, insurance, and other expenses in the ordinary course;

(b) complete the transactions described in the Glass Declaration, including [redacted] (Glass Decl. ¶¶ 6–7);

(c) pay reasonable attorneys' fees and costs, including in this proceeding; and

(d) pay his and his family's living expenses. (Glass Decl. ¶ 8).

74. Spirit suffers no cognizable harm from these payments. They leave in place any restraint on the escrow funds that Mr. Glass holds, if any, and they preserve the value of the

businesses on which any eventual judgment would depend. If the Court requires further protection for Spirit, it can require reporting of transactions outside the ordinary course above a threshold the Court sets.

## IV. IF ANY RESTRAINT REMAINS, SPIRIT MUST POST SECURITY

75. Rule 65(c) permits a restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Security "assures the enjoined party that it may readily collect damages from the funds posted," *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011), and the amount of the bond marks the limit of what the enjoined party can later recover. *See id.* at 557, 559.

76. Spirit asks the Court to excuse it from security because Rule 7065 allows relief on a debtor's application "without compliance with Rule 65(c)" and because of a "general rule in this district." (Spirit Mot. ¶ 40.) Spirit gives no reason specific to this case. Rule 7065 does not displace Rule 65(c). It provides only that, on a debtor's application, "the court *may* issue a temporary restraining order or preliminary injunction without complying with subdivision (c)." Fed. R. Bankr. P. 7065 (emphasis added). The exemption is discretionary, and Spirit has given the Court literally no reason to exercise that discretion in its favor.

77. The decision Spirit cites, *In re Lyondell Chem. Co.*, is not to the contrary: the court exercised its discretion to forego a bond there because it found only a remote possibility that the enjoined parties would suffer injury needing protection. 402 B.R. 571, 595 (Bankr. S.D.N.Y. 2009). Here the injury is not remote. EZVerify faces the loss of its ability to operate, and [redacted]. (Glass Decl. ¶¶ 5–7.) Spirit is a chapter 11 debtor, and without security Mr. Glass has no assurance of a source of recovery if the restraint proves wrongful. An order which restrains every asset of an individual and his businesses, and that

has already halted their operations, warrants a substantial security. If the Court is inclined to continue any aspect of the current TRO as it relates to Mr. Glass, he will be prepared to promptly supplement the record with specific facts to facilitate the Court's ability to set the bond at an appropriate amount to address the harm he may suffer.

## V. THE COURT SHOULD HEAR THIS MOTION ON TWO DAYS' NOTICE

78. Spirit obtained the Amended TRO without notice to Mr. Glass. (Amended TRO at 2.) Rule 65(b)(4) provides that, "[o]n 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order," and that "[t]he court must then hear and decide the motion as promptly as justice requires." Fed. R. Civ. P. 65(b)(4), made applicable by Fed. R. Bankr. P. 7065. The Amended TRO says the same. (Amended TRO ¶ 8.)

79. Mr. Glass is serving this Motion on Spirit on Friday, October 23, 2026, through its counsel by email. Monday, October 26, 2026 falls more than two days after that service. Mr. Glass asks the Court to hear and decide this Motion on that day, or at the Court's earliest availability, as promptly as justice requires. The request does not depend on the further hearing that the Amended TRO sets for November 2, 2026 (Amended TRO ¶ 2); Rule 65(b)(4) entitles Mr. Glass to be heard on two days' notice whatever other hearing is scheduled. The harm is occurring now: EZVerify cannot meet its obligations, and [redacted]. (Glass Decl. ¶¶ 5, 7.)

## CONCLUSION

80. For the reasons set forth herein, the Court should (a) dissolve the Amended TRO as to Mr. Glass; (b) in the alternative, modify and clarify the Amended TRO as requested herein; (c) if any restraint remains, require Spirit to post an appropriate security; and (d) grant any other

relief the Court finds just and proper. For the reasons stated herein, Mr. Glass further requests that the Court hear this Motion in two days' time.

Dated: October 23, 2026
New York, New York

**KOBRE & KIM LLP**

*/s/ Daniel J. Saval*

Daniel J. Saval
Steven G. Kobre
800 Third Avenue
New York, NY 10022
Telephone: +1 (212) 488-1200
Facsimile: +1 (212) 488-1220
Email: daniel.saval@kobrekim.com
Email: steven.kobre@kobrekim.com

-and-

Michael C. Fasano (*pro hac vice* pending)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: +1 (305) 967-6100
Fax: +1 (305) 967-6120
Email: michael.fasano@kobrekim.com