**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1301 Avenue of the Americas
40th Floor
New York, New York 10019
Telephone: (646) 777-0053
Michael J. Barrie
Abbey Walsh

*Attorneys for Defendants CSDS Asset Management LLC, Sriyantha Benedict Sirimanne, and Christopher Keller*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11897 (SHL)<br><br>(Jointly Administered) |
| SPIRIT AIRLINES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CSDS ASSET MANAGEMENT LLC, ZED AEROCAPITAL LLC, WIKERT INVESTMENTS COMPANY LLC, SRIYANTHA BENEDICT SIRIMANNE, CHRISTOPHER KELLER, GERALD GLASS, JIM IACONO, ZANDER FUTERNICK, AND GARY LESNICK<br><br>Defendants. | Adversary Proceeding<br>No. 26-01102 (SHL) |

**DEFENDANT CHRISTOPHER KELLER'S MOTION TO DISSOLVE OR, ALTERNATIVELY, MODIFY OR CLARIFY TEMPORARY RESTRAINING ORDER**

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

## TABLE OF CONTENTS

**Page No.**

PRELIMINARY STATEMENT ..... 1
FACTUAL BACKGROUND ..... 2
LEGAL STANDARD ..... 3
ARGUMENT ..... 4
I. The Court Should Dissolve the Amended TRO As It Relates to Keller. ..... 4
A. A Party May Not Obtain a TRO Freezing Another Party's Assets ..... 4
B. Spirit Cannot Show Irreparable Harm ..... 6
C. Spirit Cannot Show a Likelihood of Success on the Merits as To Keller ..... 7
D. The Balance of Equities and Public Interest Favor Keller ..... 8
II. Alternatively, the Court Should Modify the Amended TRO. ..... 10
III. Alternatively, the Court Should Clarify the Amended TRO. ..... 12
IV. The Court Should Hear This Motion on Two Days' Notice. ..... 13
CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*In re Adelphia Communications Corp.*,
323 B.R. 345 (Bankr. S.D.N.Y. 2005) .................... 9, 10

*In re AMR Corp.*,
502 B.R. 23 (Bankr. S.D.N.Y. 2013) .................... 7, 10

*Flores v. Town of Islip*,
382 F. Supp. 3d 197 (E.D.N.Y. 2019) .................... 7

*Glidedowan, LLC v. New York State Dep't of Health*,
768 F. Supp. 3d 503 (W.D.N.Y. 2025) .................... 7

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*,
415 U.S. 423 (1974) .................... 3, 10

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) .................... 5

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) .................... 4, 6, 7

*Haggiag v. Brown*,
728 F. Supp. 286 (S.D.N.Y. 1990) .................... 11

*In re Homaidan*,
640 B.R. 810 (Bankr. E.D.N.Y. 2022) .................... 8

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
917 F.2d 75 (2d Cir. 1990) .................... 6

*Leadenhall Cap. Partners, LLP v. Advantage Cap. Holdings LLC*,
171 F.4th 155 (2d Cir. 2026) .................... 4, 5, 6

*Lightbox Ventures, LLC v. 3RD Home Ltd.*,
No. 16CV2379(DLC), 2016 WL 6562107 (S.D.N.Y. Oct. 28, 2016) .................... 9

*Mercer Health & Benefits LLC v. DiGregorio*,
307 F. Supp. 3d 326 (S.D.N.Y. 2018) .................... 9

*In re MF Glob. Holdings Ltd.*,
562 B.R. 55 (Bankr. S.D.N.Y. 2017) .................... 7

*New York v. Trump*,
765 F. Supp. 3d 287 (S.D.N.Y. 2025)....................11

*NML Cap., Ltd. v. Republic of Argentina*,
No. 08-CV-6978 (TPG), 2016 WL 836773 (S.D.N.Y. Mar. 2, 2016), *aff'd sub nom. Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98 (2d Cir. 2016)....................3

*Nokia Corp. v. InterDigital, Inc.*,
645 F.3d 553 (2d Cir. 2011)....................11

*PCS Wireless LLC v. A to Z Wireless Sols. Inc.*,
841 F. Supp. 2d 649 (E.D.N.Y. 2012)....................8

*In re Primera Energy, LLC*,
No. 15-51396-CAG, 2015 WL 6556887 (Bankr. W.D. Tex. Oct. 28, 2015)....................4

*Schmidt v. Lessard*,
414 U.S. 473 (1974) (per curiam)....................12

*SEC v. Citigroup Glob. Markets Inc.*,
673 F.3d 158 (2d Cir. 2012)....................8

*Stagg P.C. v. United States Dep't of State*,
673 F. App'x 93 (2d Cir. 2016)....................7

*Waldman Publ'g Corp. v. Landoll, Inc.*,
43 F.3d 775 (2d Cir. 1994) (abrogated on other grounds)....................10

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)....................3, 6, 8

**Other Authorities**

Federal Rule of Bankruptcy Procedure 7065....................1, 3, 12, 13

Federal Rule of Civil Procedure 65.................... *passim*

Pursuant to Federal Rule of Civil Procedure ("Rule") 65(b)(4), as made applicable by Federal Rule of Bankruptcy Procedure 7065, Defendant Christopher Keller ("Keller") respectfully moves this Court to dissolve the Order entered on October 21, 2026 (the "Amended TRO") [ECF No. 15] granting Plaintiff Spirit Airlines, LLC's ("Spirit") Motion for an Order Amending and Clarifying the Temporary Restraining Order on Sources of Escrow Funds (the "Motion to Amend") [ECF No. 16], as it applies to him. In the alternative, Keller respectfully requests that the Court either clarify or modify the Amended TRO to ensure that it is construed as narrowly as warranted here and, to the extent any restraint remains, require Spirit to post appropriate security.

**PRELIMINARY STATEMENT**

1. Keller respectfully moves this Court for relief from the *ex parte* Amended TRO that enjoins him from all economic activity.[2] The Amended TRO, if it continues in effect, prohibits Keller from buying a tank of gas or a bag of groceries and essentially confines him and his family to their home.

2. And yet Plaintiff's Motion to Amend does not allege that the Escrow Funds are now—or ever were—in the possession of any of the CSDS Defendants, and certainly not Keller's. Indeed, the causes of action against the CSDS Defendants in the Amended Complaint seek only monetary remedies, such that Plaintiff's request for a TRO fails to demonstrate that the TRO would prevent irreparable harm.

3. As such, Keller respectfully requests that the Court lift the Amended TRO with respect to him because it places unwarranted, overbroad, and impermissible restraints on him and his assets, none of which are alleged to include the Escrow Funds.

[2] CSDS Asset Management LLC and Sriyantha Benedict Sirimanne (together with Keller, the "CSDS Defendants") are represented by the same counsel as Keller. Counsel will file a separate motion on their behalf.

## FACTUAL BACKGROUND

4. Plaintiff commenced the above-captioned adversary proceeding against CSDS on October 14, 2026, by filing the original complaint [ECF No. 1]. Plaintiff then sought and obtained an *ex parte* TRO against CSDS on the same day [ECF No. 2].

5. On October 21, 2026, Plaintiff filed an Amended Complaint [ECF No. 17] that added multiple defendants to the proceeding, including Keller and Sirimanne. On the same day, Plaintiff sought and obtained the *ex parte* Amended TRO against all of the defendants, including the CSDS Defendants.

6. The CSDS Defendants, including Keller, retained Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch") on October 22. On that day, Benesch sent the CSDS Defendants copies of the Amended Complaint and Amended TRO. That was the first time the Keller became aware of the Amended TRO and the Amended Complaint. Despite not being served by Plaintiff until Benesch agreed to accept service on the afternoon of October 26, Keller has endeavored to comply with the Amended TRO since receiving notice of it.

7. The Amended Complaint includes eight causes of action, all of which seek the same ultimate relief, the Escrow Funds (as such term is defined in the APA), to which Plaintiff claims it is entitled under the Aircraft Sale and Purchase Agreement dated as of February 9, 2026 (the "APA") by and among CSDS and Plaintiff.

8. The Amended TRO Motion requested the issuance on the Amended TRO to prevent any transfer of assets by the Restrained Parties in an attempt to ensure that Plaintiff will have access to the CSDS Defendants' assets to satisfy any judgment it might obtain in the Adversary Proceeding. With respect to Keller, this request was made despite no allegations whatsoever alleging that Keller has—or at any time had—possession of the Escrow Funds.

## **LEGAL STANDARD**

9. Pursuant to Federal Rule of Bankruptcy Procedure 7065, Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 65(b)(4) provides that a party subject to a temporary restraining order issued without notice may move to dissolve or modify the order on two days' notice, or on shorter notice set by the court. The court must then "hear and decide the motion as promptly as justice requires." FED. R. CIV. P. 65(b)(4).

10. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A federal court has "wide discretion" to vacate or modify injunctions. *NML Cap., Ltd. v. Republic of Argentina*, No. 08-CV-6978 (TPG), 2016 WL 836773, at *6 (S.D.N.Y. Mar. 2, 2016), *aff'd sub nom. Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98 (2d Cir. 2016). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

11. The standard for obtaining injunctive relief *ex parte* is even higher. A court may issue a temporary restraining order without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the movant's attorney certifies in writing the reasons notice should not be required. FED. R. CIV. P. 65(b)(1)(A)–(B). Such an order may last no more than 14 days unless the court extends it for good cause or the adverse party consents. FED. R. CIV. P. 65(b)(2). *Ex parte* restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm," and should remain in effect only "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S.

423, 439 (1974). Every restraining order must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." FED. R. CIV. P. 65(d)(1)(B)–(C).

## ARGUMENT

### I. The Court Should Dissolve the Amended TRO As It Relates to Keller.

#### A. A Party May Not Obtain a TRO Freezing Another Party's Assets

12. The Amended TRO grants relief that the Supreme Court has held federal courts have no power to award. In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), the Supreme Court held that federal courts lack authority under Rule 65 to preliminarily enjoin a defendant from transferring assets in which the plaintiff claims no lien or equitable interest, merely to secure an eventual money judgment. In *Grupo Mexicano*, the district court had entered such an order after finding that the defendant was "at risk of insolvency if not already insolvent" and planned to use its only substantial asset to pay other creditors. *Id.* at 312. Even on those facts, the Supreme Court vacated the injunction, explaining that Rule 65 relief depends on traditional principles of equity jurisdiction and that courts of equity historically could not freeze assets in aid of a claim for legal damages. *Id.* at 318–19. In short, *Grupo Mexicano* "limited the availability of a preliminary injunction in federal court to freezing only those assets where a lien or equitable interest in the assets is claimed." *In re Primera Energy, LLC*, No. 15-51396-CAG, 2015 WL 6556887, at *3 (Bankr. W.D. Tex. Oct. 28, 2015).

13. *Grupo Mexicano* remains good law, and, in fact, the Second Circuit reaffirmed it this year in *Leadenhall Cap. Partners, LLP v. Advantage Cap. Holdings LLC*, 171 F.4th 155, 162 (2d Cir. 2026). There, the court vacated an asset freeze against defendant guarantors because the plaintiff lenders held only a contractual right against them and held neither a lien on nor an equitable interest in the guarantors' assets. *Id.* at 161–63. No equitable interest existed because the

lenders (i) sought money damages reflecting only a general interest in compensation, and (ii) identified no property "belonging in good conscience to the plaintiff[s]" that could "clearly be traced to particular funds or property in the defendant[s'] possession." *Id.* at 163. The court also rejected the lenders' attempt to recast their claim as one for "specific performance," because the relief they sought amounted to "ensuring the legal debt can be paid" and thus created no cognizable equitable interest. *Id.* at 165.

14. As *Leadenhall* explained, "[t]he propriety of a preliminary injunction in relation to a court's equitable powers is determined by the nature of the final relief sought." *Id.* at 164 (emphasis omitted). Restitution, for example, is "not an exclusively equitable remedy"; it lies in equity only where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 165 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 215 (2002)). And "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* (quoting *Knudson*, 534 U.S. at 214). A court may restrain fungible assets such as money without identifying particular property only "where the plaintiff is pursuing a claim for final equitable relief, and the preliminary injunction is ancillary to the final relief." *Id.* at 164.

15. That rule is dispositive here. Spirit seeks only a money judgment from the CSDS Defendants, so it has no lien on, or equitable interest in, any asset they hold. (Am. Compl. ¶¶ 93, 99, 107, 113, 121–22, 128.) Spirit sought the Amended TRO to prevent the dissipation of funds that left the Escrow Account (as such term is defined in the APA). But restricting Keller's use of his own assets does nothing to preserve those funds: By Spirit's own allegations, the missing escrow funds are in Zed's and Wikert's accounts, not Keller's. (*Id.* ¶¶ 3, 79, 132.) Because Spirit

cannot trace any of the funds it seeks to particular property in Keller's possession—nor does it allege otherwise—its claim against him is legal, not equitable. Under *Grupo Mexicano* and *Leadenhall*, the Amended TRO cannot stand as to Keller.

16. And in any event, a temporary restraining order is the wrong tool for Spirit's requested relief. Injunctive relief purports to preserve what could be in a court's later award. The Amended TRO already restricts the accounts in which Spirit asserts the escrow funds sit—"Zed's bank accounts at Seacoast National Bank and JPMorgan Chase Bank, and Wikert's bank account at Amarillo National Bank." (Am. TRO ¶ 4; *see also* Am. Compl. ¶ 6.) Further restraining Keller's other assets preserves nothing to which Spirit would be entitled in this case. It serves only to secure a possible future money judgment—precisely what *Grupo Mexicano* forbids.

**B. <u>Spirit Cannot Show Irreparable Harm</u>**

17. "Irreparable injury is one that cannot be redressed through a monetary award." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). Injunctive relief is unavailable "[w]here money damages are adequate compensation." *Id.* Spirit must "demonstrate that irreparable injury is *likely* in the absence of an injunction"; the mere possibility of harm falls short of the requisite standard. *Winter*, 555 U.S. at 22 (emphasis in original). Spirit's alleged injury is the financial loss—$48,015,000—caused by alleged breaches of the APA and the loss of the Escrow Funds as a means of compensation for the alleged defaults. If Spirit prevails, a money judgment would fully redress that injury, making it reparable.

18. Moreover, Spirit does not allege that money damages would be inadequate compensation. It alleges that the harm it would suffer without the Amended TRO is that "Additional Parties may well attempt further actions to place assets outside of the Debtors' reach," and that it would "be irreparably harmed if not permitted to proceed on an emergency basis and ex parte." (Am. TRO ¶¶ 7, 37.) Plaintiff offers no case law or other authority to support either of these

contentions constituting irreparable harm. And, in fact, as noted above, under *Grupo Mexicano*, the desire to conserve a defendant's assets for the plaintiff if it prevails on its action does not constitute irreparable harm or grounds for a TRO.

### C. Spirit Cannot Show a Likelihood of Success on the Merits as To Keller[3]

19. The Amended Complaint inaccurately alleges, in conclusory fashion, that Keller is a "principal and partner of CSDS Asset Management LLC" and that he is the "alter-ego[] of CSDS." (Am. Compl. ¶¶ 13, 89.) He is none of those things and in fact holds no equity in CSDS. Nor does he "dominate and control CSDS" to any extent at all. (Am. Compl. ¶ 95.) Spirit relies on these inaccurate characterizations to lodge all manner of claims against Keller, including breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, and fraudulent misrepresentation, but the facts demonstrate that Keller did not have the authority, control, or ownership of CSDS that Spirit relies on to support its claims against him. Even more critically for present purposes, neither Keller nor anyone in his family ever received any transfer of the Escrow Funds or from the Escrow Account in this action, nor has he or anyone in his family ever received any funds from Zed AeroCapital LLC or Wikert Investments—the two entities actually alleged to have received the Escrow Funds. Accordingly, Spirit cannot show a likelihood of success on the merits with respect to its claims against Keller.

[3] While Keller is confident that he has dispositive defenses to Spirit's claims on the merits, he need not address the element of likelihood of success on the merits in order to demonstrate the propriety of the relief sought herein. *See In re MF Glob. Holdings Ltd.*, 562 B.R. 55 (Bankr. S.D.N.Y. 2017) (requiring satisfaction of the four-factor test or, alternatively, "show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief"). Even missing just one factor warrants the denial of a temporary restraining order. *In re AMR Corp.*, 502 B.R. 23, 37 (Bankr. S.D.N.Y. 2013) (denying temporary restraining order because the moving party failed to show irreparable harm); *Glidedowan, LLC v. New York State Dep't of Health*, 768 F. Supp. 3d 503, 525 (W.D.N.Y. 2025) (denying injunctive relief because the balance of equities favored the non-moving party); *Flores v. Town of Islip*, 382 F. Supp. 3d 197, 245 (E.D.N.Y. 2019) ("Regardless of a plaintiff's ability to demonstrate irreparable harm and substantial likelihood of success on the merits, a district court may deny injunctive relief if it is against the public interest."); *Stagg P.C. v. United States Dep't of State*, 673 F. App'x 93, 96–97 (2d Cir. 2016) (denying injunctive relief because the public interest and balance-of-equities factors weighed so heavily in the non-movant's favor).

**D. <u>The Balance of Equities and Public Interest Favor Keller</u>**

20. The Supreme Court's opinion in *Winter* is instructive: "Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation modified). A court should consider not only the interests of *all* parties, but also the interests of the *broader public* as well. *See In re Homaidan*, 640 B.R. 810, 857 (Bankr. E.D.N.Y. 2022) ("[T]he Court considers not just the interests of the parties, but the broader question of the public interest."); *SEC v. Citigroup Glob. Markets Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) ("[W]hen a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest."). In the present case, consideration of those factors is not just appropriate but necessary.

21. The balance of equities and public interest decisively favor Keller. It is not hyperbole to say that the Amended TRO will have crippling effects for Keller. Currently, the Amended TRO prevents Keller—an *individual*, not a business—from using a single dollar of his own assets to meet daily *basic* needs or purchase so much as a tank of gas. As long as the Amended TRO remains operative, Keller cannot pay his mortgage or satisfy a co-pay at a doctor's visit. Keller is neither an officer nor an equity holder of CSDS, and Spirit includes no allegations suggesting that any of the Escrow Funds were ever in his possession such that restraining his assets is remotely appropriate. Instead of maintaining the status quo, the Amended TRO—at least as to Keller—imperils it. *See, e.g.*, *PCS Wireless LLC v. A to Z Wireless Sols. Inc.*, 841 F. Supp. 2d 649, 654 (E.D.N.Y. 2012) (dissolving a temporary restraining order and denying a preliminary injunction in part because the restrained party's bank accounts were frozen and it could not "meet its legitimate financial obligations, including, but not limited to, meetings[sic] its payroll obligations"); *Lightbox Ventures, LLC v. 3RD Home Ltd.*, No. 16CV2379(DLC), 2016 WL 6562107, at *11 (S.D.N.Y. Oct. 28, 2016) (denying a preliminary injunction in part because the

injunction would impose hardships on third parties by disrupting business contracts who have no contractual relationship to the litigation and it would impose hardship on customers who would lose access to their contractual benefits with no connection to the litigation); *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 355 (S.D.N.Y. 2018) (creating a carveout in injunctive relief for servicing existing clients because preventing that service "would be a mandatory injunction that alters the status quo," and the "harm it would inflict on [the restricted party's] clients must be balanced against its necessity").

22. The Amended TRO is also hampering *Keller's* ability to retain counsel to defend himself in this action—a harm this Court previously defined as irreparable. In *In re Adelphia Communications Corp.*, the court granted plaintiff's motion for a temporary restraining order freezing all assets of the individual defendants and their family-owned entities. 323 B.R. 345, 359 (Bankr. S.D.N.Y. 2005). Even so, the court carved out of the freeze exceptions to avoid undue hardship. *Id.* at 359 n.18. As to the entities, the court allowed "any working property . . . to use its proceeds to pay ordinary course expenses." *Id.* at 359. As to the individual defendants, the court permitted them to "use whatever funds were necessary for reasonable living expenses and for . . . defense costs." *Id.* The court later explained that "a financial inability to defend oneself has serious consequences, and is irreparable," and that this "was a major factor in the decision to include a carveout" from the TRO. *Id.* at 374. This outcome—however temporary—is particularly inequitable in light of the fact that none of the CSDS Defendants is alleged to possess any of the Escrow Funds at issue here. Because of this irreparable harm, coupled with a money judgment's ability to fully satisfy any and all of Spirit's alleged losses, the Court should dissolve the Amended TRO or, at a minimum, grant a carveout like the one in *Adelphia*.

23. Far from preserving the status quo, the Amended TRO upends it, paralyzing

Keller's and his family's daily life without providing any means of remedying the injury of which Spirit complains. This is the opposite of preserving the status quo and contravenes what an *ex parte* restraining order is meant to achieve. *See Granny Goose Foods*, 415 U.S. at 439; *In re AMR Corp.*, 502 B.R. at 41–42, 44–45 (denying a temporary restraining order after considering the negative impact on employee morale, performance, retention, compensation, and customer service).

24. In clear contrast, Spirit faces *no harm* if the Court dissolves the Amended TRO as to Keller. Spirit admits that Keller does not hold any of the Escrow Funds, alleging in its Amended Complaint that "Zed, Wikert, Iacono, and Glass caused or procured transfers of the entirety of those [escrow] funds out of the Escrow [Account]." (Am. Compl. ¶ 132; *see also id.* ¶¶ 3, 79.) Thus, restraining Keller's assets does nothing to preserve those funds. Any harm Spirit can prove can be remedied by a money judgment against parties other than Keller. That outcome does not require the sweeping relief the Amended TRO provides.

## II. Alternatively, the Court Should Modify the Amended TRO.

25. In the alternative, should the Court decline to dissolve the Amended TRO, Keller respectfully asks that the order be narrowed so that he can continue to meet his ordinary day-to-day personal and familial obligations. This relief is appropriate because any remaining restraint must fit the harm it seeks to prevent. Injunctive relief "should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (abrogated on other grounds). An order that freezes a defendant's operating business is the opposite of tailored. *See Haggiag v. Brown*, 728 F. Supp. 286, 291–92 (S.D.N.Y. 1990) (freezing assets would "in effect, freeze the operations" of the business and prevent payment of bills and salaries); *see also New York v. Trump*, 765 F. Supp. 3d 287, 291 (S.D.N.Y. 2025) (modifying temporary restraining order and acknowledging that "[i]n entering the TRO, it was Judge Engelmayer's clear intention, as had been

requested, to maintain the status quo that existed prior to the adoption of the Agency Action. . . . To the extent that the language of the TRO can be read to inadvertently preclude routine operations or maintenance of the BFS system as they existed prior to the challenged Agency Action, modification of the TRO is appropriate.").

26. Specifically, at a minimum, the Court should modify the Amended TRO to permit Keller to pay his individual and family living expenses. These modifications would cause Spirit no cognizable harm because, based on Spirit's own allegations, none of these payments would be made with the Escrow Funds. Denying them, by contrast, would deprive individuals of their basic living expenses, thereby actually changing the status quo to all parties' detriment, all prior to an adjudication on the merits and giving Keller an opportunity to defend himself.

27. If the Court leaves any restraint in place, it should require Spirit to post a bond. Rule 65(c) permits a restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Security "assures the enjoined party that it may readily collect damages from the funds posted," *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011), and the bond amount caps what the enjoined party can later recover. *See id.* at 557, 559. Without a bond, Keller would bear the full cost of a wrongful restraint with no assured means of recovery.

28. Nothing in Rule 7065 excuses Spirit from this obligation. Rule 7065 does not displace Rule 65(c); it provides only that, on a debtor's application, "the court *may* issue a temporary restraining order or preliminary injunction without complying with subdivision (c)." FED. R. BANKR. P. 7065 (emphasis added). The exemption is discretionary, and Spirit has offered no reason for the Court to exercise that discretion in its favor. Therefore, should restraints on

Keller's ability to use his assets remain, the Court should require Spirit to post an appropriate bond.

## III. Alternatively, the Court Should Clarify the Amended TRO.

29. If the Court does not dissolve or modify the Amended TRO, it should clarify it. Rule 65(d) requires every restraining order to "state its terms specifically." FED. R. CIV. P. 65(d)(1)(B). The rule "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders," and "the specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam). The Amended TRO's breadth and ambiguity effectively bar Keller from living his daily life in the ordinary course.

30. *First*, the Amended TRO restrains "any assets, property, or funds within [Keller's] ownership, possession, custody, or control." (Am. TRO ¶¶ 3–4.) That language is not limited or otherwise tethered to the escrow funds, to property traceable to them, or to any identified account. Nor does the order indicate whether it reaches income earned after the order issued, assets held jointly or in a representative capacity, or property in which Keller holds only a partial interest.

31. *Second*, the Amended TRO bars Keller from "transfer[ring]," "utiliz[ing]," or "disburs[ing]" any asset. (*Id.*) The order does not say whether these terms prohibit ordinary payments such as invoices, payroll, taxes, rent, or even fees for counsel to provide a defense in this proceeding. As a result, Keller cannot meet his everyday obligations without risking a violation of the Amended TRO. This is an untenable catch-22 for him.

32. Accordingly, if the Court declines to dissolve or modify the Amended TRO, it should clarify that the order:

- restrains Keller only from using the alleged Escrow Funds, and property traceable to them, in his own possession, custody, or control;
- does not bind any non-party entity or individual, except as Rule 65(d)(2) provides;
- does not prohibit payments in the ordinary course of business or for personal living expenses; and

- states the date and hour of its issuance and its expiration, as Rule 65(b)(2) requires.

## IV. The Court Should Hear This Motion on Two Days' Notice.

33. Spirit obtained the Amended TRO with no notice to Keller or the other CSDS Defendants. (Am. TRO at 2.) Therefore, Rule 65(b)(4) provides that, "[o]n 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order." FED. R. CIV. P. 65(b)(4), made applicable by FED. R. BANKR. P. 7065. "The court must then hear and decide the motion as promptly as justice requires." *Id.* The Amended TRO further underscores this procedure. (Am. TRO ¶ 8.)

34. Keller is serving this Motion on Spirit on Monday, October 26, 2026 through its counsel by email. Wednesday, October 28, 2026, falls two days after that service. Keller asks that the Court hear and decide this Motion on that day, or at the Court's earliest availability. Rule 65(b)(4), applicable here through Rule 7065, entitles Keller to be heard on two days' notice regardless of the hearing that the Amended TRO sets for Monday, November 2, 2026. (Am. TRO ¶ 2.)

## CONCLUSION

For the above-stated reasons, the Court should (1) dissolve the Amended TRO as to Keller; or (2) in the alternative, modify and clarify the Amended TRO as requested herein; and (3) if any restraint remains, require Spirit to post appropriate security; and (4) grant any other relief the Court finds just and proper. For the above-stated reasons, Keller further requests that the Court hear this Motion in two days' time.

Date: October 26, 2026
New York, New York

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*<u>/s/ Abbey Walsh</u>*
Michael J. Barrie
Abbey Walsh
1301 Avenue of the Americas
40th Floor
New York, New York 10019
Telephone: (646) 777-0053
Email: mbarrie@beneschlaw.com
abbey.walsh@beneschlaw.com

*Attorneys for Defendants CSDS Asset Management LLC, Sriyantha Benedict Sirimanne, and Christopher Keller*