**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Marshall S. Huebner
Ben S. Kaminetzky
Marc J. Tobak
Nicholas D'Angelo

*Counsel to Plaintiff Spirit Airlines, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11897 (SHL)<br><br>(Jointly Administered) |
| SPIRIT AIRLINES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CSDS ASSET MANAGEMENT LLC, ZED AEROCAPITAL LLC, WIKERT INVESTMENTS COMPANY LLC, SRIYANTHA BENEDICT SIRIMANNE, CHRISTOPHER KELLER, GERALD GLASS, JIM IACONO, ZANDER FUTERNICK, and GARY LESNIK,<br><br>Defendants. | Adv. Proc. No. 26-01102 (SHL) |

**PLAINTIFF'S MOTION TO EXTEND THE AMENDED TEMPORARY RESTRAINING ORDER FOR AN ADDITIONAL FOURTEEN DAYS**

## TABLE OF CONTENTS

PAGE

PLAINTIFF'S MOTION TO EXTEND THE AMENDED TEMPORARY RESTRAINING ORDER FOR AN ADDITIONAL FOURTEEN DAYS .............0

PRELIMINARY STATEMENT.............1

ARGUMENT.............5

I. THE COURT SHOULD EXTEND THE AMENDED TRO FOR GOOD CAUSE .............5

II. GOOD CAUSE EXISTS BECAUSE THE BASES FOR THE AMENDED TRO REMAIN INTACT .............6

- A. The Debtors are Likely to Succeed on the Merits.............6
- B. The Debtors Continue to Face Imminent, Irreparable Harm .............8
- C. The Balance of Equities and the Public Interest Continue to Favor the Debtors.............9

NO BOND IS REQUIRED.............10

CONCLUSION.............10

## TABLE OF AUTHORITIES

CASES

PAGE(S)

*725 Eatery Corp. v. City of New York*,
408 F. Supp. 3d 424 (S.D.N.Y. 2019) ..................................................................... 6

*Brenntag Int'l Chems., Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999) ................................................................................... 4

*CFPB v. Stratfs, LLC,*
2024 WL 1193952 (W.D.N.Y. Jan. 24, 2024) .........................................................5

*Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*,
402 B.R. 571 (Bankr. S.D.N.Y. 2009) ....................................................................9

*In re Sears Holding Corp.,*
659 B.R. 236 (Bankr. S.D.N.Y. 2024) ................................................................ 4-6

*In re Soundview Elite Ltd.*,
543 B.R. 78 (Bankr. S.D.N.Y. 2016) ............................................................. 5, 7-8

*V.D. v. State*,
403 F. Supp. 3d 76 (E.D.N.Y. 2019) ..................................................................... 6

STATUTES & RULES

Fed. R. Civ. P. 65 ................................................................................... 1, 3-4, 8

Fed. R. Bankr. P. 7065 ........................................................................................ 1, 8

The Bankruptcy Code. 11 U.S.C. § 105(a) ........................................................... 1, 4

Spirit Airlines, LLC (the "Plaintiff" or "Spirit"), a debtor and debtor in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), together with its debtor affiliates (collectively, the "Debtors"), hereby files this motion (this "Motion") in the above-captioned adversary proceeding (the "Adversary Proceeding") seeking entry of an order (the "Proposed Order"), pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 7065, and Rule 65(b) of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rule 7065, extending for an additional fourteen days (to November 18) the Temporary Restraining Order entered by the Court on October 21, 2026 [Adv. ECF No. 15] (the "Amended TRO"), which amended and clarified the Order Granting Temporary Restraining Order Enjoining CSDS Asset Management LLC From Moving or Disbursing Any Funds or Property [Adv. ECF No. 2] (the "Original TRO").[1] In support of this Motion, Plaintiff respectfully states as follows:

## PRELIMINARY STATEMENT

1. Spirit respectfully requests that the Amended TRO be extended, and the status quo maintained, for an addition fourteen days. Spirit requests this modest extension to preserve the status quo so that Spirit may determine what longer-term relief would appropriately be sought on the basis of expedited discovery against those Defendants that have not provided discovery or alternative security for the $48 million in improperly dissipated escrow funds.

2. Just over two weeks ago, the Debtors uncovered a fraud involving the secret dissipation of more than $48 million in escrow funds. The Debtors swiftly moved to preserve the

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Amended Adversary Complaint (the "Amended Complaint" or "Am. Compl.") [Adv. ECF No. 17], the Plaintiff's Motion for an Order Amending and Clarifying the Temporary Restraining Order on Sources of Escrow Funds (the "Motion to Amend") [Adv. ECF No. 16], or the Temporary Restraining Order entered October 21, 2026 (the "Amended TRO") [Adv. ECF No. 15]. References to the "Tobak Declaration" and the "Second Tobak Declaration" are to the Declaration of Marc J. Tobak dated October 19, 2026 [Adv. ECF No. 18] and the Second Declaration of Marc J. Tobak dated October 20, 2026 [Adv. ECF No. 19], respectively, each filed in support of the Motion to Amend. The background and factual assertions set forth in the Amended Complaint, the Motion to Amend, and the exhibits thereto are incorporated herein by reference.

status quo through the issuance of a temporary restraining order while conducting a full-scale investigation. On October 14, 2026, this Court found that the Debtors had made the requisite showing for an ex parte temporary restraining order to prevent the further dissipation of more than $48 million in missing Escrow Funds by the principal perpetrator, CSDS Asset Management LLC ("CSDS"). Original TRO at 2–3; Original TRO Motion ¶¶ 1, 26. One week later, on October 21, 2026, the Court found that the same showing had been made as to the Additional Parties—Zed, Wikert, Sirimanne, Keller, Glass, Iacono, Futernick, and Lesnik—who, the evidence shows arranged, fronted, facilitated, concealed, or received the Escrow Funds. Clarified TRO at 2 & ¶ 4; Motion to Amend ¶¶ 3, 16–20.

3. The Amended TRO was entered on a record that the Court found "clearly show[s] that immediate and irreparable injury, loss, or damage will result" before the restrained parties could be heard, and that sets forth "the reasons why notice should not be required." Amended TRO at 2. At the October 21 hearing, the Court likewise found that Plaintiff is likely to succeed on the merits of the Amended Complaint and that the equities and the public interest favor issuance of the Amended TRO. Hr'g Tr. at 32–33 (Oct. 21, 2026) (the "Oct. 21 Transcript" or "Tr.").

4. The Amended TRO expires at 3:01 p.m. (prevailing Eastern Time) on November 4, 2026, fourteen days after its entry. Amended TRO at 2 & ¶ 3. Nothing has changed since October 21 that would justify allowing it to lapse. The Escrow Funds have not been returned. No Restrained Party has accounted for them. And the limited new information that has arisen—primarily in the form of filings from Zed and its principals—only underscores the seriousness of the conduct at issue and the necessity of continuing to gain information quickly while the status quo is maintained.

5. Based on the discovery produced to date, the following is clear: (1) the Defendants coordinated to defraud the Debtors into entering (and the Court into approving) the APA and the HFS Sale Order; (2) Zed, CSDS and Wikert (and their principals) knew at all times that the Debtors would rely on CSDS's representation that the required downpayment to purchase 20 aircraft was placed into escrow, but that CSDS never actually did so; (3) the funds that the Debtors and the Court were told were placed in escrow were secreted without notice to either the Debtors or the Court mere days after the Debtors announced CSDS as the Stalking Horse Buyer; and (4) the escrow funds were impermissibly sent to the conspirators, but not one has come forward to tell the Debtors where those funds are now.

6. At every turn, Plaintiff has been confronted with new and inventive roadblocks. Rather than assist the Debtors, the Defendants have largely asserted defenses—including going so far as to challenge personal jurisdiction and service—and pointed the finger at co-conspirators rather than offer any explanation for the escrow funds' disappearance.[2] The CSDS Parties, Wikert, and the Zed Parties have, at best, been entirely inert or, in some cases, actively frustrated the Debtors' efforts to advance this case, obtain necessary discovery, and develop the full evidentiary record upon which the next phase of this case will turn. Certain Defendants have cooperated with Spirit's investigation, providing timely discovery, stating, under penalty of perjury, that they did not receive any of the dissipated escrow funds, and agreeing not to secrete assets in a manner that would frustrate judgment of the Court. The TRO has already been dissolved as to those parties.

[2] Counsel for Mr. Glass entered an appearance on October 23 [Adv. ECF No. 21] and requested admission *pro hac vice* [Adv ECF No. 22]. Counsel for Defendants CSDS, Sriyantha Benedict Sirimanne, and Christopher Keller (the "CSDS Parties") filed a notice of appearance on October 26 [Adv. ECF Nos. 27, 28]. Counsel for Defendants Zed, Iacono, Futernick, and Lesnick (the "Zed Parties") made a limited appearance solely for purposes of filing a Motion to Dissolve the Amended Temporary Restraining Order [Adv. ECF Nos. 30, 31].

7. Plaintiff has served multiple discovery requests on Defendants. With the exception of Mr. Glass, who has produced documents pursuant to the parties' stipulation [Adv. ECF No. 37], and Mr. Keller, who has agreed to similar terms [Adv. ECF No. 42], Plaintiff has not received ***any*** documents from ***any*** Defendant in response to these requests, or ***any*** designation of a corporate representative or date for such representative's deposition. The Zed Parties have been particularly uncooperative, refusing to comply with validly served subpoenas and denying Plaintiff an opportunity to depose the declarant to their Motion to Dissolve the TRO [Adv. ECF No. 31] prior to the November 2 hearing. It is Plaintiff's understanding that the Zed Parties also do not intend to make Mr. Futernick available for cross-examination at that hearing.

8. The limited information learned since entry of the Amended TRO shows that the Zed Parties knew of CSDS's transaction with Spirit, they knew that Spirit would rely on the representations made by CSDS even if they were false, and they orchestrated a secret side deal to ensure that transaction would be consummated. Futernick Decl. ¶¶ 23–29, Ex. C. These admissions alone warrant extension of the status quo. In short, while parties have come out of the woodwork as a result of the Amended TRO, they are slow to cooperate. Allowing the Amended TRO to lapse in these circumstances would reward the Defendants' efforts to frustrate the progress of this case.

9. The Debtors intend and desire to move for additional, longer-term relief as soon as possible and, ideally, to be heard at the November 17 Omnibus Hearing. Unfortunately, given some Defendants' dilatory tactics, Plaintiff does not know who amongst the conspirators has possession of the missing escrow funds or their proceeds, only that they conspired to ensure that the escrow funds were sent back to themselves. Without the necessary evidentiary record, Plaintiff cannot put forth the necessary information required for a motion seeking a preliminary injunction.

10. The Debtors, therefore, request a modest, fourteen-day extension of the Amended TRO to preserve the status quo while the Debtors continue to trace the Escrow Funds and press for responses to the discovery requests. *See* Fed. R. Civ. P. 65(b)(2). The same four factors that the Court found satisfied on October 14 and October 21—likelihood of success on the merits, irreparable harm, the balance of equities, and the public interest—remain satisfied today for the same reasons, and good cause exists for the requested extension. *See In re Sears Holding Corp.*, 659 B.R. 236, 248 (Bankr. S.D.N.Y. 2024) (Lane, J.); *see also* Original TRO at 2–3; Amended TRO at 2; Oct. 21, 2026 Hr'g Tr. at 31–33.

## ARGUMENT

## I. THE COURT SHOULD EXTEND THE AMENDED TRO FOR GOOD CAUSE

11. The purpose of a temporary restraining order is to "preserv[e] the status quo pending resolution of the underlying action." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Once a temporary restraining order is entered, Rule 65(b) of the Federal Rules of Civil Procedure (the "Rules") provides that a temporary restraining order "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2) (emphasis added). A party may seek an extension of a TRO issued without notice, and "[t]he reasons for an extension must be entered in the record." Fed. R. Civ. P. 65(b)(2). "A party can demonstrate good cause for an extension by showing that the original grounds for granting the TRO continue to exist." *CFPB v. Stratfs, LLC*, 2024 WL 1193952, at *3 (W.D.N.Y. Jan. 24, 2024).[3]

[3] CSDS may argue that, as to them, such an extension would go beyond the 28-day time limit outlined in Rule 65(b). That time limit does not apply where, as here, "the parties had notice of the [] court's order and the opportunity to present their opposition to it." *See In re Criminal Contempt Proceedings Against Gerald Crawford*, 329 F.3d 131, 137–38 (2d Cir. 2003); *see also In re Homaidan*, 640 B.R. 810, 844 (Bankr.

12. Section 105(a) of the Bankruptcy Code independently authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). These powers extend to the issuance of injunctions to preserve and prevent dissipation of assets for the benefit of a debtor's estate. *See In re Soundview Elite Ltd.*, 543 B.R. 78, 121 (Bankr. S.D.N.Y. 2016) (granting freezing injunction where estate fiduciary was "attempting to marshal the [] estate's assets for the benefit of its creditors, and to protect those creditors from efforts to dissipate property" even where that property "may technically not yet be estate property"). That is all Plaintiff seeks here.

## II. GOOD CAUSE EXISTS BECAUSE THE BASES FOR THE AMENDED TRO REMAIN INTACT

13. A temporary restraining order may issue where the movant has demonstrated that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable injury in the absence of a restraining order; (3) the balance of equities tips in the movant's favor; and (4) the restraining order is in the public interest. *See In re Sears Holding Corp.*, 659 B.R. at 248. The Court has twice found each of these factors satisfied—with respect to the Original TRO on October 14 and with respect to the Amended TRO on October 21. *See* Original TRO at 2-3; Amended TRO at 2. None of the facts or legal principles on which those findings rest have changed.

### A. The Debtors are Likely to Succeed on the Merits

14. "[T]o demonstrate the requisite likelihood of success on the merits, plaintiffs are not required to show that success on their complaint is an absolute certainty, but rather that the probability of success is 'better than fifty percent.'" *Sears*, 659 B.R. at 249 (quoting *V.D. v. State*,

E.D.N.Y. 2022) ("[A]s the Second Circuit and other courts have found, a temporary restraining order that provides it will be in effect for an indefinite duration and ultimately remains in effect beyond the time limitations contained in Federal Rule of Civil Procedure 65(b) is simply treated as a preliminary injunction of indefinite duration."). Of course, Spirt is not requesting an order of "indefinite duration" but an order for an additional fourteen days.

403 F. Supp. 3d 76, 87 (E.D.N.Y. 2019)). The movant need only demonstrate a likelihood of success "on the merits of at least one of [movant's] claims." *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019).

15. The Court has already concluded that "it's pretty clear the debtors are likely to succeed on the merits of their claims," explaining that "[t]here were representations made that money was placed under escrow," that "while there are in fact two escrows here, there's only one possible escrow" anyone could understand those representations to mean, and that "notwithstanding the restrictions on that escrow, the money has disappeared." Oct. 21 Tr. at 32. The Court also found that to be "true . . . for all the additional parties." *Id.*

16. Those facts are unchanged. The Escrow Agreement permitted disbursement of the Escrow Funds "only in accordance with: (x) joint instructions signed by each of Buyer and Seller; (y) a Bankruptcy Court order directing such disbursement or (z) Buyer's Confirmatory Unilateral Disbursement Notice." Escrow Agreement § 6(c); Amended Complaint ¶ 28. The Debtors never signed any joint instruction, and the Court never ordered any release to any Defendant. Amended Complaint ¶¶ 103–104. Yet the entire $53.35 million was secretly returned to Zed and Wikert in April 2026 through an elaborate scheme that they orchestrated with CSDS and their principals. *Id.* ¶¶ 46, 79. The Court has also already determined, in connection with the First Escrow Motion, that "CSDS has breached the APA (as modified by the Second CMLA) and a Buyer's Default (as defined in the APA) has taken place and is continuing." *Id.* ¶ 68 (quoting ECF No. 1711).

17. The Amended Complaint asserts these claims against each Restrained Party, including conversion and unjust enrichment against all Defendants, breach of contract and fraudulent misrepresentation against the CSDS Parties, and tortious interference and aiding and abetting fraudulent misrepresentation against Zed, Wikert, Glass, Iacono, Futernick, and Lesnik.

Am. Comp. ¶¶ 86–143. Nothing filed since October 21 undermines the evidentiary showing on which the Court has previously relied. And while the Zed Parties have advanced ill-founded legal arguments in their Motion to Dissolve the Amended TRO [Adv. ECF No. 30], they do not dispute the underlying evidence submitted by the Debtors nor do they introduce any new or exculpatory evidence. If anything, the Zed Parties' filings provide further support: unbeknownst to the Debtors there was a secret side deal to provide fake escrow deposits for the explicit and sole purpose of tricking the Debtors into entering a transaction with CSDS. *See e.g.*, Declaration of Alexander Futernick [Adv. ECF No. 31], Ex. D § 4(b).[4]

**B. The Debtors Continue to Face Imminent, Irreparable Harm**

18. The Court found on October 14 that transfers of assets "may frustrate the Court's ability to enforce its prior orders and Debtors' ability to obtain relief," Original TRO at 2, and on October 21 that "the funds have disappeared," so that "to the extent that there's any recovery there needs to be . . . the relief requested to keep funds in place so that some meaningful relief can occur." Oct. 21 Tr. at 32; *see also* Amended TRO at 2. That risk has not abated and may have, in fact, increased given the lack of compliance by Defendants. Because of that lack of cooperation, the Escrow Funds have not been returned and their present location remains unknown. Until the Debtors can trace where the funds went after reaching Zed and Wikert, permitting the Restrained Parties to move assets would risk placing them permanently beyond the reach of the Court. *See* Oct. 21 Tr. at 20. Such harm to a liquidating estate's ability to marshal and monetize its assets is exactly the harm that freezing injunctions exist to prevent. *See Soundview*, 543 B.R. at 121–22.

19. The same is true of aircraft N696NK, which the Debtors understand remains in storage in Arizona and which may represent a principal source of recovery in this action. Original

---

[4] Plaintiff fully addresses the arguments advanced in the Zed Parties' motion in their opposition brief filed contemporaneously with this Motion.

TRO Motion ¶¶ 30, 39. If the restraint lapses, nothing would prevent Defendants from selling or relocating the aircraft before a preliminary injunction can be heard.

### C. The Balance of Equities and the Public Interest Continue to Favor the Debtors

20. The Court found that the balance of equities and the public interest "easily tilt in favor of the debtors," because "we're trying to preserve the status quo so that parties can't dissipate, secrete, or fraudulently transfer money or property that was entitled to be given to the debtors under the escrow agreement," and because "there's a value . . . for the public interest in having court orders be honored and having a court in bankruptcy be able to have these transactions come in front of the Court, having them approved and have them carried out as has been approved." Oct. 21 Tr. at 32–33. Those considerations apply with equal force today. Safeguarding assets for the benefit of a debtor's creditors is manifestly equitable and in the public interest. *See Soundview*, 543 B.R. at 120. The public interest is additionally served by maintaining the restraint against parties who have failed to respond to discovery requests and frustrated efforts to complete service.

21. Whatever cognizable harm the Restrained Parties may suffer from an additional fourteen-day freeze cannot outweigh the injury to the Debtors and their estates if the restraint lapses. To the extent any Restrained Party claims hardship because its assets are frozen, that is a problem of its own making: had the Escrow Funds remained in place as required by the Escrow Agreement, the APA, and the HFS Sale Order, no restraining order would have been necessary. As the Debtors stated in the Motion to Amend, the Debtors recognize that Sirimanne, Keller, Glass, and the Zed Principals are natural persons who may be required to spend assets for their or their dependents' daily needs. To that end, Plaintiff has reached agreement with Mr. Glass and Mr. Keller. *See* Adv. ECF Nos. 32, 42. If other individual Defendants can provide an accounting and security sufficient to satisfy the Court that they did not receive the escrow funds, Plaintiff remains

willing to narrow the relief to limit any unfair burden. Motion to Amend ¶ 39. We are waiting by the phone for any constructive outreach.

## NO BOND IS REQUIRED

22. Rule 65(c) generally permits a court to issue a temporary restraining order "only if the movant gives security." Fed. R. Civ. P. 65(c). Bankruptcy Rule 7065, however, provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." Fed. R. Bankr. P. 7065. Consistent with the Original TRO and the Amended TRO entered by this Court, which require no bond, Original TRO ¶ 5; Amended TRO ¶ 7, Plaintiff respectfully requests that no bond be required in connection with the extension. *See Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 595 (Bankr. S.D.N.Y. 2009).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court enter the Proposed Order extending the Amended TRO, on the same terms and as to all Restrained Parties (including the Additional Parties), for an additional fourteen days, and granting such other and further relief as the Court may deem just and proper.

Dated: October 29, 2026
New York, New York

**DAVIS POLK & WARDWELL LLP**

*/s/ Ben S. Kaminetzky*

Marshall S. Huebner
Ben S. Kaminetzky
Marc J. Tobak
Nicholas D'Angelo
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000

*Counsel to Plaintiff Spirit Airlines, LLC*

Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11897 (SHL)<br><br>(Jointly Administered) |
| SPIRIT AIRLINES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CSDS ASSET MANAGEMENT LLC, ZED AEROCAPITAL LLC, WIKERT INVESTMENTS COMPANY LLC, SRIYANTHA BENEDICT SIRIMANNE, CHRISTOPHER KELLER, GERALD GLASS, JIM IACONO, ZANDER FUTERNICK, and GARY LESNIK,<br><br>Defendants. | Adv. Proc. No. 26-01102 (SHL) |

**ORDER GRANTING PLAINTIFF'S MOTION TO EXTEND THE AMENDED TEMPORARY RESTRAINING ORDER FOR AN ADDITIONAL FOURTEEN DAYS**

Upon the motion (the "**Motion**")[2] of Spirit Airlines, LLC (the "Plaintiff" or "Spirit"), a debtor and debtor in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), in the above-captioned adversary proceeding (the "Adversary Proceeding"), for entry of an order (this "Order") pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 7065, and Rule 65(b) of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rule 7065,

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Aviation Holdings, Inc. (1797); Spirit Airlines, LLC (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or, to the extent not defined therein, the Amended TRO.

extending for an additional fourteen days the Temporary Restraining Order entered by the Court on October 21, 2026 [Adv. ECF No. 15] (the "Amended TRO"), which amended and clarified the *Order Granting Temporary Restraining Order Enjoining CSDS Asset Management LLC From Moving or Disbursing Any Funds or Property* [Adv. ECF No. 2] (the "Original TRO"); and upon the Court having reviewed the Motion, the Declaration in support of the Motion, the Amended Adversary Complaint [Adv. ECF No. 17] (the "Amended Complaint"), and upon the record of the hearing held on the Motion and all of the proceedings had before the Court; and the Court having jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that venue is proper before this Court pursuant to 28 U.S.C. § 1409(a); and the Amended TRO being scheduled to expire at 3:01 p.m. (prevailing Eastern Time) on November 4, 2026; and the Motion having been filed before the expiration of the Amended TRO; and the Court having found that the grounds on which the Original TRO and the Amended TRO were granted continue to exist, including that the specific facts set forth in the record clearly show that immediate and irreparable injury, loss, or damage will result to Plaintiff and the Debtors' estates absent an extension, including by any Restrained Party transferring, disbursing, moving, or secreting assets, which injury is irreparable because such transfers may frustrate the Court's ability to enforce its prior orders and the Debtors' ability to obtain relief; and the Court having found that Plaintiff remains likely to succeed on the merits, and that the balance of the equities and the public interest favor the extension; and the Court having found that good cause exists to extend the Amended TRO for a like period pursuant to Federal Rule of Civil Procedure 65(b)(2), and the reasons for such extension having been entered on the record; and the Court having determined that the legal and factual bases set forth in the Motion and supporting materials establish just cause

for the relief granted herein; and for the reasons stated on the record on November 2, 2026; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. A further hearing will be held on Plaintiff's request for further injunctive relief, whether by seeking a further extension of the Amended TRO, as extended hereby, or by request for preliminary injunction, at such time as the Court may order.

3. The Amended TRO is extended, on the same terms and as to all Restrained Parties, such that the Restraint Period shall continue, subject to further order of the Court, until 14 days after entry of this Order, unless further extended by the Court for good cause or with the consent of the applicable Restrained Party.

4. For avoidance of doubt, the Restrained Parties are: CSDS Asset Management LLC, Zed Aerocapital LLC ("Zed"), Wikert Investments Company LLC ("Wikert"), Sriyantha Benedict Sirimanne, Jim Iacono, Zander Futernick, and Gary Lesnik, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order.

5. During the Restraint Period, the Restrained Parties shall not take any action, directly or indirectly, to transfer, withdraw, utilize, encumber, disburse, secrete, or move any assets, property, or funds within their ownership, possession, custody, or control, including but not limited to Zed's bank accounts at Seacoast National Bank and JPMorgan Chase Bank, and Wikert's bank account at Amarillo National Bank.

6. During the Restraint Period, the Restrained Parties shall not take any action, directly or indirectly, to move, relocate, fly, ferry, reposition, or otherwise take or exercise possession or control of, or transfer, sell, encumber, or hypothecate the aircraft bearing U.S. registration number N696NK.

7. Plaintiff shall serve a copy of this Order on the Restrained Parties or on the counsel of record for any Restrained Party that has appeared in the Adversary Proceeding, promptly following its entry. Plaintiff may serve a copy of this Order on any other entity reasonably believed to have possession, custody, or control over assets belonging to the Restrained Parties. A Restrained Party may move to dissolve or modify this Order on two (2) days' notice to Plaintiff, or on such shorter notice as the Court may set, and the Court shall hear and decide such motion as promptly as justice requires.

8. This Order constitutes a temporary restraining order pursuant to Bankruptcy Rule 7065, section 105(a) of the Bankruptcy Code and shall be effective and enforceable immediately upon its entry and shall expire at the end of the Restraint Period unless extended or earlier modified or dissolved by further order of the Court.

9. Nothing herein shall be deemed to limit any further application Plaintiff may make in this Adversary Proceeding or in the Chapter 11 Cases, including without limitation, with respect to the release of the Escrow Funds to Spirit or further application for injunctive relief.

10. Pursuant to Bankruptcy Rule 7065, Plaintiff is not required to post any bond or other security.

11. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

12. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, the HFS Sale Order, the APA, and the Escrow Agreement.

**SO ORDERED**

Dated: ____________, 2026
White Plains, New York

_______________________________________
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE