**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**SPIRIT AVIATION HOLDINGS, INC., *et al.*,**<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11897 (SHL)<br>(Jointly Administered) |
| **SPIRIT AIRLINES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CSDS ASSET MANAGEMENT LLC, ZED AEROCAPITAL LLC, WIKERT INVESTMENTS COMPANY LLC, SRIYANTHA BENEDICT SIRIMANNE, CHRISTOPHER KELLER, GERALD GLASS, JIM IACONO, ZANDER FUTERNICK, and GARY LESNIK,**<br><br>Defendants. | Adversary Proceeding<br>No. 26-01102 (SHL) |

**NOTICE OF FILING IN SUPPORT OF EMERGENCY MOTION OF ZED AEROCAPITAL LLC, ZANDER FUTERNICK, JIM IACONO, AND GARY LESNIK TO DISSOLVE THE AMENDED TEMPORARY RESTRAINING ORDER [ADV. ECF NO. 15] AS TO THE ZED PARTIES**

ZED AeroCapital LLC ("**ZED**"), Zander Futernick, Jim Iacono, and Gary Lesnik (collectively, the "**ZED Parties**"), file a true and correct copy of that certain Escrow Agreement, by and among (a) CSDS Asset Management LLC (along with its successors and assigns), (b) Spirit Airlines, LLC (along with its successors and assigns), and (c) McAfee & Taft A Professional Corporation, as escrow agent, dated February 9, 2026, attached hereto as **Exhibit A,** in support of their *Emergency Motion of ZED Aerocapital, LLC, Zander Futernick, Jim Iacono, and Gary Lesnik to Dissolve the Amended Temporary Restraining Order [Adv. ECF. No. 15] as to the ZED Parties* [ECF No. 30]**.**

Dated: October 30, 2026

Respectfully Submitted,

**COLE SCHOTZ P.C.**
Brickell City Tower
80 SW 8th Street, Suite 1900
Miami, Florida 33130
Telephone: (305) 374-4848
Email: LSalazar@coleschotz.com
Secondary: cs-eservice-Miami@coleschotz.com

By: /s/ Luis Salazar
Luis Salazar (admitted FL, NY, NJ)
New York Bar No. 2574762

-and –

1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Jacob Frumkin, Esq.
New York Bar No. 4800215
Email: jfrumkin@coleschotz.com
Arielle H. Wasserman
New York Bar No. 5657119
Email: awasserman@coleschotz.com

*Counsel to ZED AeroCapital LLC, Zander Futernick, Jim Iacono, and Gary Lesnik*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of October, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record and interested parties identified on the attached Service List via CM/ECF, to those registered to receive Notices of Electronic Filing generated by CM/ECF.

*/s/ Luis Salazar*
Luis Salazar

**SERVICE LIST**

VIA CM/ECF ONLY:

- **Michael Jason Barrie** mbarrie@beneschlaw.com, debankruptcy@beneschlaw.com;kcapuzzi@beneschlaw.com;lmolinaro@beneschlaw.com
- **Benjamin S. Kaminetzky** kaminet@dpw.com, ecf.ct.papers@davispolk.com
- **Amy Lee Nashon** anashon@troygould.com
- **Luis Salazar** lsalazar@coleschotz.com, alee-sin@coleschotz.com;jceide@coleschotz.com;jcervera@coleschotz.com;dfernandez@coleschotz.com;cs-eservice-miami@coleschotz.com;luis-salazar-4791@ecf.pacerpro.com
- **Daniel Joseph Saval** daniel.saval@kobrekim.com
- **Marc Joseph Tobak** mtobak@dpw.com, purdue.bloyd.service@davispolk.com;ecf.ct.papers@davispolk.com
- **Abbey Walsh** abbey.walsh@beneschlaw.com, docket2@beneschlaw.com;lmolinaro@beneschlaw.com

# EXHIBIT A

# ESCROW AGREEMENT

This Escrow Agreement (the "**Agreement**") is entered into as of this 9th day of February, 2026, among (a) CSDS Asset Management LLC (along with its successors and assigns, "**CSDS**" or "**Buyer**"), having an address at 13880 N. Adonis Road, Marana, Az 85658, (b) Spirit Airlines, LLC (along with its successors and assigns, "**Seller**"), having an address at 1731 Radiant Drive, Dania Beach, Florida 33004, and (c) McAfee & Taft A Professional Corporation, as escrow agent, with address of Tenth Floor, Two Leadership Square, 211 North Robinson, Oklahoma City, OK 73102-7103 (the "**Escrow Agent**"). Buyer and Seller are collectively referred to herein as the "**Parties**."

WITNESSETH:

WHEREAS, pursuant to that certain Aircraft Sale and Purchase Agreement (SPIRIT-CSDS 2026) (the "**SPA**"), dated as of February 9, 2026, between Seller and Buyer, Seller has agreed to sell to Buyer, and Buyer has agreed to buy from Seller, certain used Airbus A320 and A321 aircraft as set forth in Exhibit A to the SPA, a copy of which Exhibit is attached as **Exhibit D** hereto (each, an "**Aircraft**" and collectively, the "**Aircraft**") together with all applicable maintenance records and documents in Seller's possession or control. Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the SPA.

WHEREAS, Seller and its affiliates commenced cases as debtors under the Bankruptcy Code on August 29, 2025 in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Buyer shall pay the amount of the Escrow Funds to the Escrow Agent to create the escrow created hereunder as provided below.

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, effective from and after the date hereof:

1. Deposit of Funds. Within the timeframe required by the SPA, but no later than three (3) Business Days after the execution of the SPA, Buyer will pay to Escrow Agent, and Escrow Agent will acknowledge receipt from Buyer of the deposit of $53,350,000.00 US Dollars with respect to all of the Aircraft (such total amount, the "**Escrow Funds**"), to be applied toward the Purchase Price of each of the Aircraft on the terms and conditions set forth herein, in the escrow account of Escrow Agent with JPMorgan Chase Bank, N.A. (the "**Bank**") as set forth on **Exhibit A** (the "**Escrow Account**"). The Escrow Funds shall be held for the benefit of Seller and Buyer pursuant to the terms and conditions of this Agreement. "**Business Day**" means a day other than Saturday or Sunday on which banks in, New York City, New York and Oklahoma City, Oklahoma, are open for business.

2. Escrow Account. The Escrow Account is an interest-bearing sweep account, in which the Escrow Funds are swept on a nightly basis into U.S. Treasury bills, notes and other obligations issued or guaranteed as to principal and interest by the U.S. Treasury, and swept back

into the Escrow Account at the beginning of each Business Day. The Bank's wiring deadline for transferring funds out of the Escrow Account is 3:00 p.m., Central Time.

3. The Bank. The Parties hereto agree that Escrow Agent shall not be liable or responsible in any respect for any losses or damages as may result or allegedly result from any act or omission of the Bank, including any failure of the Bank to correctly follow any instructions of the Parties or the Escrow Agent, or the failure, insolvency or bankruptcy of the Bank or the appointment of any receiver or similar official for the Bank.

4. U.S.A. Patriot Act Compliance. The "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (U.S.A. Patriot) Act of 2001," Pub. L. No. 107-56 (the "**Patriot Act**") requires certain due diligence in connection with transactions involving "financial institutions" as defined therein. The Escrow Agent believes that it is not a "financial institution" as defined in the Patriot Act and that this transaction is otherwise specifically exempt from the requirements of the Patriot Act, and in support of such:

a. Any funds wired to the Escrow Agent must come directly from the Buyer and from an account held in the name of the Buyer (not a parent, subsidiary, related company, officer or director), all funds must be funds which are an integral part of the transaction, and Escrow Agent may only wire funds at closing to parties that are an integral part of the transaction; and

b. As a precautionary matter, the Escrow Agent also maintains a Customer Identification Program ("**CIP**") in accordance with the Patriot Act. In accordance with the CIP, each Party hereby acknowledges that the name of the Party as noted above is accurate and the address noted herein is its principal place of business. Further, the Parties confirm that neither they nor their affiliates appear on the following lists of known or suspected terrorist organizations and sanctioned or prohibited countries: Financial Action Task Force on Money Laundering list of High-risk and non-cooperative jurisdictions (http://www.fatf-gafi.org); United States Department of the Treasury, Office of Foreign Assets Control Specifically Designated Nationals and Blocked Persons (SDN List) (http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx); and United States Department of Commerce, Bureau of Industry and Security Lists of Parties of Concern (http://www.bis.doc.gov/index.php/policy-guidance/lists-of-parties-of-concern).

5. Closing.

a. On a date mutually acceptable to the Parties as notified in writing to the Escrow Agent by the Parties, and upon the satisfaction or waiver by the Parties of the applicable conditions precedent for their respective obligation to purchase or sell any Aircraft, as the case may be, set forth in Section 4.1 of the SPA, the Parties shall execute in counterpart a **Closing Notice** with respect to such Aircraft (the form of which is attached hereto as **Exhibit B**) and provide such Closing Notice to the Escrow Agent for acknowledgement and countersignature by the Escrow Agent.

b. Following Escrow Agent's receipt from Seller or Buyer of (a) the Closing Notice executed by the Parties and (b) pursuant to Section 3.3(a) of the SPA, a PDF of the FAA Bill of Sale executed by Seller in favor of Buyer with respect to an Aircraft delivered to the Escrow Agent (in its capacity as FAA Counsel) in escrow, the Escrow Agent shall do the following (collectively, the "**Closing Actions**"): (i) timely (in accordance with the provisions of this Agreement) disburse an amount equal to 1/20 of the amount of the Escrow Funds to Seller in respect of each single Aircraft described in the Closing Notice, free and clear of and without any deduction or withholding, pursuant to the wire transfer instructions of Seller set forth in Section 2.3(b) of the SPA (and/or, in whole or in part, to such other account(s) as Seller may notify Escrow Agent in writing), and (ii) confirm in writing the foregoing action to the Parties; *provided, however,* that if Buyer pays the full Purchase Price for any Aircraft to Seller (as confirmed by Seller in the Closing Notice), then the Escrow Agent shall refund an amount equal to 1/20 of the amount of the Escrow Funds to the wire instructions set forth in a written notice from Buyer to Escrow Agent. The Escrow Agent will complete the Closing Actions noted in this section as simultaneously as practical. The Parties hereto understand and agree that once the Escrow Agent commences any one of the Closing Actions noted above, Escrow Agent will complete all of the Closing Actions regardless of any conflicting instructions or requests from the Parties.

6. Return of Escrow Funds to Buyer.

a. Notwithstanding anything contained herein to the contrary, but subject to Sections 5(b), 6(b) and 6(c) hereof, the Escrow Funds (or the applicable portion thereof, as specified below) then currently held by the Escrow Agent shall be paid to the applicable Party set forth below not later than the fifth (5th) Business Day following the Escrow Agent's receipt of written notice of the occurrence of any of the following events (each a "**Payment Event**") from Buyer (or such later date as may be required pursuant to Section 6(b)):

(i) if Buyer is not the winning bidder at the Auction and (a) is not named the "Back-Up Bidder" at the Auction, as determined by the Seller, or (b) is named the "Back-Up Bidder" at the Auction, as determined by Seller, but Seller has not timely given notice to Buyer that Seller intends to pursue the sale with Buyer as the Back-Up Bidder, as contemplated in Section 5.5 of the SPA, the total amount of the Escrow Funds shall be refunded and paid to Buyer;

(ii) if an Aircraft Non-Sale Event occurs with respect to any Aircraft, including as a result of a Technical Delivery Walkaway Right for such Aircraft having been properly exercised by Seller, an amount equal to 1/20 of the amount of the Escrow Funds shall be refunded and paid to Buyer in respect of such Aircraft (provided that, if (and only if) Seller has given to the Escrow Agent (with a copy to Buyer) written notice that a Buyer's Default has previously occurred with respect to such Aircraft and is continuing or is not curable, then an amount equal to 1/20 of the Escrow Funds shall be paid to Seller in respect of such Aircraft);

(iii) (x) for each Aircraft the sale of which is terminated under the SPA pursuant to Section 6.3(a) of the SPA, an amount equal to 1/20 of the Escrow Funds shall be paid to Seller with respect to such Aircraft and (y) for each Aircraft the sale of which is terminated

under the SPA pursuant to Section 6.3(b) of the SPA, an amount equal to 1/20 of the Escrow Funds shall be refunded and paid to Buyer with respect to such Aircraft;

(iv) if any Aircraft suffers a Total Loss prior to Delivery, an amount equal to 1/20 of the amount of the Escrow Funds shall be refunded and paid to Buyer in respect of such Aircraft; or

(v) upon any other termination of the sale of a particular Aircraft pursuant to the SPA, an amount equal to 1/20 of the Escrow Funds shall be refunded and paid to Buyer with respect to such Aircraft (provided that if, and only if, Seller has given to the Escrow Agent (with a copy to Buyer) written notice that a breach by Buyer has previously occurred under clause (iii) of the definition of "Buyer's Default" and such breach has matured into a Buyer's Default and is continuing or is not curable, then an amount equal to 1/20 of the Escrow Funds shall be paid to Seller in respect of such Aircraft).

b. For any portion of the Escrow Funds to be paid to Buyer or Seller pursuant to Section 6(a), above, any such payment will be payable (and must be correspondingly evidenced) as follows:

(1) if such payment is agreed upon in writing by Seller and Buyer, such payment will be made within one (1) Business Day following the Escrow Agent's receipt of a written notice executed by both Parties and so stating; or

(2) prior to Buyer giving a Confirmatory Unilateral Disbursement Notice to Escrow Agent with respect to such payment, the Parties shall have discussed in good faith a potential resolution to the circumstances giving rise to such notice for a period not to exceed five (5) Business Days (or such longer period as agreed to in writing by the Parties) (a "**Resolution Period**"), and (c) if no such resolution results from such discussions, then the Escrow Agent shall refrain from distributing the applicable portion of the Escrow Funds until either (A) the Escrow Agent receives notice that the Bankruptcy Court has issued a ruling as to whether the relevant conditions for an applicable portion of Escrow Funds to be paid to Buyer or Seller, as the case may be, have been satisfied (in which case the Escrow Agent shall disburse the applicable Escrow Funds in accordance with such ruling), or (B) the Parties notify the Escrow Agent in writing of their agreement as to the disposition of such portion of the Escrow Funds, in which case payment will be made by the Escrow Agent within one (1) Business Day following the Escrow Agent's receipt of such written notice executed by both Parties.

c. Upon the occurrence of any Payment Event, Buyer has the option to send a confirmatory notice to the Escrow Agent in substantially the form set forth on **Exhibit C** attached hereto (a "**Confirmatory Unilateral Disbursement Notice**"), stating that a Payment Event has occurred and that the Escrow Agent is required, in accordance with the terms of Section 6(a), to pay the Escrow Funds or the applicable portion thereof, as specified above, to the applicable Party; *provided, however*, that (i) prior to sending a Confirmatory Unilateral Disbursement Notice, the Parties shall comply with Section 6(b), above, (ii) the foregoing option of Buyer to send a

Confirmatory Unilateral Disbursement Notice to the Escrow Agent shall not, subject to Section 6(b), affect or limit the obligation of the Escrow Agent to refund or pay, as the case may be, the applicable portion or the applicable amount of the Escrow Funds as provided in Section 6(a) above, or affect or limit the obligation of Buyer or Seller under this Agreement or any other Transaction Document, and (iii) the foregoing shall not limit the Seller's or Buyer's rights under this Agreement or any other Transaction Document (including Seller's or Buyer's rights under Section 6(b, above)). Notwithstanding any conflicting or inconsistent provisions in this Agreement, the Escrow Agent shall disburse Escrow Funds only in accordance with; (x) joint instructions signed by each of Buyer and Seller; (y) a Bankruptcy Court order directing such disbursement or (z) Buyer's Confirmatory Unilateral Disbursement Notice as provided herein.

d. Without having any effect upon the foregoing distribution and payment requirements set forth in this Section 6, upon receipt of any notice from any of the Parties (including any Confirmatory Unilateral Disbursement Notice from Buyer), the Escrow Agent shall promptly forward any written notice that it receives to the following email addresses: thomas.canfield@spirit.com; treasuryrisk@spirit.com; beliu@debevoise.com; jball@debevoise.com; Benedict Sirimanne ben@csdsjets.com; singerman@bergersingerman.com; dlampert@bergersingerman.com

7. Term. The terms and conditions of this Agreement shall commence on the date hereof and shall continue until the earliest of:

a. such time as all of the Escrow Funds have been distributed by Escrow Agent pursuant to this Agreement;

b. the 210th day following the entry of the Sale Approval Order, if the transactions contemplated in this Agreement and the SPA with respect to the Aircraft have not closed unless another date mutually agreed by the Parties is notified via email to the Escrow Agent;

c. the Escrow Agent has received written notice executed in counterpart by the Parties which (i) instructs the Escrow Agent that this Agreement has been terminated, and (ii) advises Escrow Agent which of the Parties shall receive all or any portion of the Escrow Funds and provides wiring instructions for the transfer(s); or

d. this Agreement has otherwise been lawfully terminated.

If this Agreement shall terminate pursuant to section (b) or (d) above, the Escrow Agent shall return the Escrow Funds via wire transfer, to Buyer at the direction of Buyer. Upon such return by the Escrow Agent, this Agreement shall terminate and all of the Parties hereto shall be released from any further duties, obligations or liabilities hereunder, except the obligation of the Parties to pay any fees and expenses incurred by the Escrow Agent as provided herein; and provided, however, that the Parties shall have such remedies and rights as may be provided in the Transaction Documents.

8. Escrow is Not Property of Seller; Related Terms.

a. The Parties and the Escrow Agent recognize and agree that Buyer has funded the Escrow Funds to the Escrow Agent and such Escrow Funds are established as an escrow solely in accordance with the terms of this Agreement and the SPA and shall only be released to the Parties upon the satisfaction of the conditions set forth herein.

b. The Parties hereby disclaim all power of dominion and control over the funds in the Escrow Account and the Escrow Funds and acknowledge that they shall not have any right, interest or access to the funds in the Escrow Account and the Escrow Funds except as specifically provided in this Agreement and the SPA.

c. The Parties and the Escrow Agent recognize and agree that Seller shall have no legal, equitable or beneficial rights in or to any portion of the Escrow Funds unless and until either (i) the conditions for utilization and payment to Seller of a portion of the Escrow Funds at a closing as set forth in Section 5 hereof are satisfied or (ii) the parenthetical in Section 6(a)(ii) or 6(a)(v) has been satisfied or Section 6(a)(iii)(x) applies (and in each case evidenced in accordance with Section 6(b) hereof); in which cases, the applicable portion of the Escrow Funds shall be paid by the Escrow Agent to Seller as provided in such provisions of this Agreement. In furtherance of the foregoing, Seller acknowledges and agrees that the funds in the Escrow Account shall not constitute the property of the Seller's bankruptcy estate within the meaning of § 541 of the Bankruptcy Code; *provided, however*, that the terms of this Agreement shall remain as governing the Escrow Agent and the Escrow Funds.

d. In the event that, notwithstanding the foregoing, the Bankruptcy Court determines that Seller has a continuing or contingent right, title or interest in or to the funds in the Escrow Account and/or the Escrow Funds and that all or any portion of the funds are some form of property of the Seller's bankruptcy estate, Seller hereby acknowledges and agrees that all such funds in the Escrow Account and the Escrow Funds shall constitute Buyer's "cash collateral" within the meaning of §§ 361 and 363 of the Bankruptcy Code. Seller further acknowledges that in such event, Buyer does not consent to Seller's use of such cash collateral, and that Seller shall have no right to use or apply any such cash collateral unless and until Seller shall have received a court order authorizing use of the same, and Buyer shall have been provided with "adequate protection" of its interests in the funds in the Escrow Account and/or the Escrow Funds, within the meaning of §§ 361 and 363 of the Bankruptcy Code.

e. Upon Buyer funding the Escrow Funds to the Escrow Agent, the Parties agree that the only material term that remains to be completed is the Escrow Agent's conveyance of the Escrow Funds in accordance with the terms of this Agreement and that, accordingly, this Agreement shall not constitute an "executory contract" as such term is used in the Bankruptcy Code. In furtherance of the foregoing, Seller shall not seek to reject this Agreement under Section 365 of the Bankruptcy Code or otherwise in its pending chapter 11 case.

9. Limitation of Escrow Agent's Liability. The Escrow Agent shall not be liable for any action taken or omitted to be taken by it while acting in good faith and in the exercise of its judgment under this Agreement or any instrument executed pursuant hereto, except for its own

willful misconduct, fraud or gross negligence, nor be responsible for the effectiveness, enforceability, validity or due execution of this Agreement or any instrument executed pursuant hereto including, without limitation, the Closing Notice. The Escrow Agent shall be entitled to rely upon any notice, consent, certificate, statement, signature or writing which it believes to be genuine and to have been presented by a proper person. In the event of any disagreement between any of the Parties, or between them or any of them and any other Person, resulting in divergent or adverse claims or demands being made in connection with the subject matter of this Agreement, or in the event the Escrow Agent, in good faith, is in doubt as to what action should be taken hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any Person for its good faith failure or refusal to act; and the Escrow Agent shall be entitled to continue to so refrain from acting until (i) the rights of the parties shall have been fully and finally adjudicated by a court of competent jurisdiction or (ii) all differences shall have been adjusted and all doubt resolved to the reasonable satisfaction of the Escrow Agent by agreement among all of the interested Persons and the Escrow Agent shall be notified thereof in writing signed by all such Persons; or (iii) the Escrow Agent interpleads the Escrow Funds with the Bankruptcy Court.

As between themselves and the Escrow Agent, the Parties agree to indemnify and hold the Escrow Agent harmless from all losses, costs, damages, expenses and attorneys' fees suffered or incurred by Escrow Agent arising from acts or omissions of the Escrow Agent in the good faith performance of or pursuant to or in connection with this Agreement, except such acts or omissions as may be the result of the Escrow Agent's gross negligence, bad faith, fraud or willful misconduct.

10. Time of the Essence. The Parties agree that time shall be of the essence of this Agreement with respect to any deadlines and requirements as set forth in this Agreement with respect to the disposition of the Escrow Funds as provided herein.

11. Notices. Any notice or communication hereunder shall be given in writing by serving the same upon the party to whom the notice is addressed via overnight courier service or by certified mail, return receipt requested, at the addresses set forth in the opening paragraph of this Agreement.

12. Intentionally omitted.

13. Escrow Agent's Fees. Escrow Agent shall be paid a fixed fee of $22,000.00 US Dollars and shall be reimbursed for all reasonable costs and expenses incurred when acting in such capacity. Buyer and Seller shall each be obligated for 50% to Escrow Agent for such fees and expenses. If the transaction under this Agreement does not close for any reason, the Escrow Agent's fees shall still be due and payable.

14. Governing Law. This Agreement and any performance hereunder shall be governed by, and construed in accordance with, the laws of the State of Oklahoma.

15. Entire Agreement. This Agreement constitutes the entire agreement of the Parties hereto and the Escrow Agent regarding the terms of the escrow and, as of the effective date of this Agreement, the terms and provisions contained herein shall supersede all other agreements

between the Parties hereto with respect to the terms of the escrow, and this Agreement shall not be amended, altered or otherwise modified except by written agreement signed by all of the Parties hereto and the Escrow Agent. In the event of any conflict between the terms of (a) the SPA, on the one hand, and (b) this Agreement, on the other, regarding the escrow, the terms of this Agreement shall prevail.

16. Email Signatures and Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The Parties agree that this Agreement is valid and binding upon the execution and delivery of same via email. The Escrow Agent may rely and act upon an email communication of any notice or instruction described herein addressed to the Escrow Agent as follows: erin.vanlaanen@mcafeetaft.com; maria.gonzalez@mcafeetaft.com. The Escrow Agent shall have no responsibility or duty to ascertain the truthfulness or accuracy of any instruments contemplated herein, including notice or instructions and the Escrow Agent may assume that the Persons executing any such instruments, including notices or instructions, had the authority to do so.

17. Escrow Agent's Representation of Parties. The Parties acknowledge and agree that the Escrow Agent has in the past performed legal services for Buyer and/or Seller and may be asked by Buyer and/or Seller to provide legal services to such Parties in connection with the transaction of which this Agreement is a part. Buyer and Seller hereby agree to that representation and hereby waive any and all conflicts of interest that may arise from that representation and the Escrow Agent's performance of the undertakings provided in this Agreement. Seller and Buyer further agree that Escrow Agent's rights, obligation and duties pursuant to this Agreement are in no way affected by such representation.

[Signature pages follow.]

IN WITNESS WHEREOF, the Parties hereto have executed and delivered this Agreement as of the day and year first above written.

CSDS ASSET MANAGEMENT LLC, as
Buyer:

By:_________________________________

Title:_______________________________

Signature page

SPIRIT AIRLINES, LLC, as Seller:

By: Simon Gore

Title: SVP & Treasurer

McAFEE & TAFT A PROFESSIONAL CORPORATION, as Escrow Agent

Signed by
Erin Van Laanen
0B5F57EB96344B1...

By: ______________________ Erin Van Laanen

Title: Vice President

Signature page

# EXHIBIT A

## Wire Transfer Instructions of Escrow Agent

[redacted]

# EXHIBIT B

## Closing Notice

____________________, 2026

McAfee & Taft
A Professional Corporation
8th Floor, Two Leadership Square 211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Attention: Erin M. Van Laanen/Maria Gonzalez
Via email: erin.vanlaanen@mcafeetaft.com; maria.gonzalez@mcafeetaft.com

RE: One (1) ____________ aircraft bearing manufacturer's serial number ______, complete with two (2) installed __________ engines bearing manufacturer's serial numbers ____________ and _________, together with all applicable maintenance records and documents (the "**Aircraft**")

Ladies and Gentlemen:

Pursuant to Section 5 of the Escrow Agreement (as amended and restated from time to time) dated as of February 9, 2026 (the "**Escrow Agreement**"), among *inter alia* SPIRIT AIRLINES, LLC ("**Seller**"), CSDS Asset Management LLC ("**CSDS**" or "**Buyer**") and McAFEE & TAFT A PROFESSIONAL CORPORATION, as escrow agent (the "**Escrow Agent**"), upon receipt from Buyer of the Bill(s) of Sale ink or digitally executed by Seller in favor of Buyer with respect to the Aircraft, the Escrow Agent is hereby instructed to [release $2,667,500.00 (which is an amount equal to 1/20 of the amount of the Escrow Funds) from the Escrow Funds to Seller.][1][release $2,667,500.00 (which is an amount equal to 1/20 of the amount of the Escrow Funds) from the Escrow Funds to Buyer pursuant to the Escrow Agreement pursuant to wire instructions sent to the Escrow Agent in writing by Buyer.].[2]

---

[1] This clause shall be used if $2,667,500.00 (which is an amount equal to 1/20 of the amount of the Escrow Funds) of the Purchase Price for the Aircraft is being paid from the Escrow Funds.

[2] This clause shall be used if Seller receives the full Purchase Price for the Aircraft at the Closing from Buyer without utilizing any portion of the Escrow Funds.

CSDS ASSET MANAGEMENT LLC, as a Buyer:

By: ___________________________________

Title:___________________________________

SPIRIT AIRLINES, LLC, as Seller:

By: ___________________________________

Title:___________________________________

Acknowledged and agreed:

MCAFEE & TAFT, A PROFESSIONAL CORPORATION, as Escrow Agent:

By: ___________________________________

Title:___________________________________

# EXHIBIT C

## CONFIRMATORY UNILATERAL DISBURSEMENT NOTICE

_______________, 202__

McAfee & Taft A Professional Corporation
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Attention: Erin M. Van Laanen/Maria Gonzalez
Via Email: erin.vanlaanen@mcafeetaft.com / maría.gonzalez@mcafeetaft.com

Ladies and Gentlemen:

We refer to the Escrow Agreement dated as of February 9, 2026 (as amended and restated from time to time, the "**Escrow Agreement**"), among, Spirit Airlines, LLC ("**Seller**"), CSDS Asset Management LLC ("**CSDS**" or "**Buyer**"), and McAfee & Taft a professional corporation, as escrow agent (the "**Escrow Agent**").

Capitalized terms used but not defined in this Confirmatory Unilateral Disbursement Notice have the meanings given to them in the Escrow Agreement.

1. The undersigned certifies that the Payment Event described under clause (_) of the definition thereof has occurred in respect of the Aircraft bearing MSN [] and, prior to the delivery of this Unilateral Disbursement Notice, the undersigned has complied with the following provisions of 6(b) of the Escrow Agreement with respect to $[__] of the Escrow Funds in respect of such Aircraft, as follows [check the appropriate box]:

   □ in accordance with Clause (1) of Section 6(b), a reasonable agreement was reached between Buyer and Seller, as evidenced by the attached writing executed by both Buyer and Seller, and the undersigned hereby instructs the Escrow Agent to remit such portion of the Escrow Funds to [Buyer]/[Seller] within one (1) Business Day in accordance with Paragraph 2 below.

   □ in accordance with Clause (2) of Section 6(b), attached is a copy of the applicable order by the Bankruptcy Court.

   □ in accordance with Clause (B) of Section 6(b)(2), the Parties have agreed as to the disposition of the Escrow Funds, as evidenced by the attached writing executed by both Buyer and Seller, and the undersigned hereby instructs the Escrow Agent to remit such portion of the Escrow Funds to [Buyer]/[Seller] within one (1) Business Day in accordance with Paragraph 2 below.

Buyer has elected to send this Confirmatory Unilateral Disbursement Notice to the Escrow Agent in accordance with Section 6(b) of the Escrow Agreement and the foregoing option of Buyer to send this Confirmatory Unilateral Disbursement Notice to the Escrow Agent shall not, subject to Section 6(b) of the Escrow Agreement, affect or limit the obligation of the Escrow Agent to

refund or pay, as the case may be, the applicable portion or the full amount of the Escrow Funds as provided in Section 6(a) of the Escrow Agreement, or affect or limit the obligation of Buyer under the Escrow Agreement or any other Transaction Document and the foregoing shall not limit the Seller's rights under the Escrow Agreement or any other Transaction Document (including Seller's rights under Section 6(b) of the Escrow Agreement).

2. [Buyer Wiring Instructions.[3]

Bank:
Bank Address:
ABA No.:
For Credit to:
Bank Account No.: ]

[Seller Wiring Instructions:

Bank Name:
Account Number:
Account Name:
Wire Routing #
Address:
International Only:
with payment advice to: treasuryops@spirit.com; ref: Aircraft MSN [*].]

IN WITNESS WHEREOF, Buyer has executed this Unilateral Disbursement Notice as of the day and year first above written.

CSDS ASSET MANAGEMENT LLC:

__________________

By: ______________________________________

Name: ____________________________________

Title: _____________________________________

[3] Buyer to confirm wire instructions.