**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SPIRIT AVIATION HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11897 (SHL)<br><br>(Jointly Administered) |
| SPIRIT AIRLINES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CSDS ASSET MANAGEMENT LLC, ZED AEROCAPITAL LLC, WIKERT INVESTMENTS COMPANY LLC, SRIYANTHA BENEDICT SIRIMANNE, CHRISTOPHER KELLER, GERALD GLASS, JIM IACONO, ZANDER FUTERNICK, and GARY LESNIK,<br><br>Defendants. | Adv. Proc. No. 26-01102 (SHL) |

# ORDER APPOINTING THE HONORABLE ROBERT D. DRAIN (RET.) AS MEDIATOR AND ESTABLISHING TERMS AND CONDITIONS OF MEDIATION

Upon the status conference held by the Court on October 30, 2026, among the Debtors-Plaintiff and certain parties in interest, including representatives of the Mediation Parties (as defined below), the Court (a) has confirmed that the Mediation Parties each wish to engage immediately in mediation to explore the settlement of potential causes of action and defenses thereto related to this Adversary Proceeding and (b) after due deliberation has determined an order (this "**Order**") directing the appointment of the Honorable Robert D. Drain (Ret.) as mediator (the "**Mediator**") to conduct a mediation (the "**Mediation**") among the Mediation Parties (defined herein) regarding the Mediation Topic and establishing the terms and conditions

of the Mediation is in the interest of the estate and its stakeholders; and the Court having jurisdiction to consider the matters raised pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the relief requested being a core proceeding under 28 U.S.C. § 157(b) that this Court may decide by a final order consistent with Article III of the United States Constitution; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice or a hearing is required; and after due deliberation and good and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1. Effective immediately, the Court authorizes and appoints the Honorable Robert D. Drain (Ret.) to serve as Mediator in these chapter 11 cases to conduct a Mediation among representatives of each of the Debtors-Plaintiff, the Ad Hoc Committee of Senior Secured Noteholders, McAfee & Taft, and McAfee & Taft's various insurance carriers (in person or virtually), in each case ordered to attend with representatives with full settlement authority (each a "**Mediation Party**" and, collectively, the "**Mediation Parties**"); provided that the Ad Hoc Committee of Senior Secured Noteholders may be represented at the Mediation by counsel and members of the Ad Hoc Committee of Senior Secured Noteholders may, but shall be not be required to, attend.

2. The "Mediation Topic" shall be limited to potential causes of action by the Debtors-Plaintiff against McAfee & Taft and defenses thereto related to the events underlying this Adversary Proceeding. Any party that participates in the Mediation shall by such participation be deemed to be subject to all of the provisions of this Order.

3. The Debtors-Plaintiff are hereby authorized to enter into a mediation engagement agreement with the Mediator. The Mediator shall be entitled to compensation for his services (including for preparatory work done prior to the date hereof), as well as reimbursement for

reasonable costs. The Mediator's fees and expenses shall be split 50%/50% between M&T and Spirit, respectively. Without further order of the Court, the Debtors-Plaintiff, in a sound exercise of their business judgment, shall promptly pay their portion of such fees and expenses, which shall constitute an administrative expense of the Debtors' estates pursuant to section 503(b) of the Bankruptcy Code. The Mediation Parties shall otherwise each be responsible for their own costs associated with the Mediation, subject to any existing orders of this Court authorizing the Debtors to reimburse such costs.

4. The Mediator is authorized to determine the procedures to govern the Mediation, in his sole discretion, so long as such procedures are consistent with the terms of this Order in all material respects.

5. Unless a resolution has been reached (in the determination of the Mediator), in the Mediation before such time or upon further order of this Court, the Mediation shall terminate on or after December 4, 2026 at 11:59 p.m. (prevailing Eastern Time) pursuant to the Mediator's or any of the Mediation Party's determination (the "**Termination Date**"), except that, should the Mediation Parties agree that extending the Mediation would be helpful towards reaching a resolution, the Mediation Parties, with the agreement of the Mediator, can agree to extend the Mediation for a mutually agreed upon duration. In addition to the good-faith participation, engagement, and accessibility expected of the Mediation Parties (or, with the consent of the Mediator, their authorized representatives) for the full duration of the Mediation, the Mediator may select, in his sole discretion, three business days where the Mediation Parties selected by them shall be available for in-person (at a location chosen by the Mediator in his sole discretion) Mediation sessions. Should the Mediator in his sole discretion, determine that additional in-

person or virtual sessions are warranted, the Mediator may convene additional in-person or virtual Mediation sessions.

6. Any participant in the Mediation, as a condition to such participation, and without waiver of any position as to its continued propriety or its future modification, shall agree to keep confidential all material or information learned or acquired in the Mediation.

7. Except as provided in paragraph 15 hereof, the Mediator shall have no communication with the Court relating to the substance of the Mediation or matters occurring during the Mediation, and the Mediator shall not disclose whether a verbal agreement was reached or a Mediation Party has refused to execute a definitive written settlement agreement. The Mediator shall have no obligation to make written comments or recommendations. Except as provided in paragraph 15 hereof, the Mediator shall not be compelled to testify or disclose any information concerning the Mediation in any forum or proceeding, nor shall any Mediation Party, or any other party in interest: (a) call or subpoena the Mediator as a witness or expert in any proceeding relating to the Mediation, the subject matter of the Mediation, or any thoughts or impressions that the Mediator may have about the Mediation Parties, or their respective positions, in the Mediation, (b) subpoena any notes, documents or other materials prepared by the Mediator in connection with the Mediation, or (c) offer any statements, views or opinions of the Mediator in connection with any proceeding, including, without limitation, any pleading or other submission to any court.

8. Subject to paragraph 6 hereof: (a) no party shall be bound by anything said or done during the Mediation unless a Mediation Party voluntarily agrees to be so bound by a written and signed stipulation or agreement, and (b) the results of the Mediation are non-binding unless the Mediation Parties that agree to be so bound otherwise agree; *provided*, *however*, that

any settlement agreement(s) reached through Mediation reduced to writing and signed shall be as binding against each signatory as those reached through litigation, subject, with respect to the Debtors, to the requirements of section 363(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, and/or any other provisions of the Bankruptcy Code, as applicable, and this Court will retain jurisdiction to enforce any such settlement agreement(s).

9. All communications made by and all submissions prepared by a Mediation Party in connection with the Mediation, including but not limited to: (a) discussions among any of the Mediation Parties during the course of the Mediation, including discussions with or in the presence of the Mediator, (b) mediation statements or submissions, if any, requested by the Mediator and any documents or information provided to the Mediator or the Mediation Parties in the course of the Mediation, and (c) all correspondence, settlement proposals, counterproposals, term sheets, and offers of compromise produced for, as a result of, or in connection with the Mediation (collectively, the "**Settlement Proposals**") shall remain confidential and shall not be made available to the public; *provided*, *however*, that (i) the party making any Settlement Proposal may disclose such Settlement Proposal publicly or agree to the disclosure of such Settlement Proposal pursuant to a confidentiality agreement or otherwise, and (ii) nothing in this Order limits the ability of any Mediation Party to speak publicly (whether through court pleadings, court statements or otherwise) regarding issues in these cases, provided that doing so does not disclose confidential Mediation exchanges, data or discussions regarding Settlement Proposals (except their own) or responses thereto. The materials described in each of the foregoing clauses (a) through (c): (i) shall be protected from disclosure (and shall not be disclosed) to any other Mediation Party or to any other person or party who is not a Mediation Party (including holders of claims for which the Mediation Party is acting in a representative,

agent or trustee capacity to the extent such holders are not themselves Mediation Parties) except in accordance with this Order or an applicable confidentiality agreement, (ii) shall not constitute a waiver of any existing privileges and immunities, (iii) shall not be used for any purpose other than the Mediation, (iv) shall be subject to protection under Rule 408 of the Federal Rules of Evidence and any equivalent or comparable state law, and (v) except for the sole purpose of enforcing in the Court a settlement agreement reached in this Mediation, shall not be admissible for any purpose in any judicial or administrative proceeding. For the avoidance of doubt, if no such settlement agreement is reached, then the foregoing materials shall not be admissible anywhere. The terms of this Order shall govern any issues with respect to any Mediation Party's disclosure of any Settlement Proposals.

10. The Mediation Parties and their counsel and advisors shall not disclose to any non-party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution, or Settlement Proposal (subject to paragraph 9 hereof) that may be made or provided in connection with the Mediation; *provided*, *however*, that nothing in this Order shall prevent a Mediation Party from sharing with the Mediator, and thereafter disclosing, to the extent not prohibited by a separate confidentiality agreement, its own Settlement Proposals, any draft pleadings, any potential legal arguments such Mediation Party may raise in the Adversary Proceeding or the chapter 11 cases, any document produced or obtained in discovery, any information that is, was, or becomes available to a Mediation Party outside of the Mediation, such Mediation Party's own work product or materials, or other pleadings filed or to be filed by such Mediation Party with a court of competent jurisdiction; *provided, further*, that

nothing in this Order shall prevent the Mediator from sharing or disclosing the position of a Mediation Party, with such Mediation Party's consent.

11. Notwithstanding anything in this Order to the contrary, nothing in this Order shall prevent a Mediation Party from disclosing information revealed during the Mediation to the extent such disclosure is required, or as may be required or requested by a governmental entity with oversight or other authority over such Mediation Party, that is within the oversight or other authority of such governmental or regulatory entity, or required by statute or court order or other legal or regulatory requirements applicable to such Mediation Party; *provided*, *however*, that if such Mediation Party is requested or required to disclose any such information to any third party or governmental authority, such Mediation Party shall, to the extent not legally prohibited, provide the disclosing party with prompt written notice of such requirement prior to any disclosure, and shall furnish only that portion of such information or take only such action as is legally required. For the avoidance of doubt, no Mediation Party shall use its governmental authority to require disclosure of documents or communications created for or in the Mediation or seek an order from a court or other tribunal requiring such disclosure, pursuant to the first sentence of this Paragraph 11.

12. To the extent that any Mediation Party is in possession of privileged or confidential documents and/or information provided to such Mediation Party, such information may (with the written consent of the party that holds such privilege), but shall not be required to, be disclosed to the Mediator and other Mediation Parties, but shall otherwise remain privileged and confidential. Any Mediation Party may provide documents and/or information to the Mediator that are subject to a privilege or other protection from discovery, including the attorney-client privilege, the work product doctrine, or any other privilege, right, or immunity the

parties may be entitled to claim or invoke (the "**Privileged Information**"). By providing the Privileged Information to the Mediator or by consenting in writing to the Mediator providing such Privileged Information to another party, no Mediation Party nor its respective professionals intends to, nor shall, waive, in whole or in part, the attorney-client privilege, the work-product doctrine, or any other privilege, right or immunity that such party may be entitled to claim or invoke with respect to any Privileged Information or otherwise. Any work product, materials, or information shared or produced by a Mediation Party with the Mediator, including Privileged Information, shall be subject to all applicable mediation privileges and shall not be shared by the Mediator with any person, including any other Mediation Parties, without the consent (which shall be required to be received by the Mediator in written form solely in the case of Privileged Information) of the sharing or producing Mediation Party. Following the Termination Date, all Privileged Information shall be returned to the appropriate Mediation Party or otherwise destroyed by the Mediator, who shall provide notice upon completion of such process to each applicable Mediation Party.

13. Nothing in this Order is intended to, nor shall it, waive, release, compromise, or impair in any way whatsoever, any claims or defenses that a party has or may have, whether known or unknown, in connection with or relating to acts or omissions that took place prior to entry of this Order.

14. Nothing in this Order is intended to, nor shall it operate as, granting relief from the automatic stay in the chapter 11 cases, or the Amended Temporary Restraining Order, entered by the Court in the adversary proceeding styled, *Spirit Airlines, LLC v. CSDS Asset Management LLC et al.*, Adv. Proc. No. 26-01102 (SHL) (Bankr. S.D.N.Y. Oct. 21, 2026) [Adv. ECF No. 15].

15. Promptly following the Termination Date, the Mediator shall file a notice with the Court setting forth the following: (a) that the Mediator conducted the Mediation, (b) the names of the participants in the Mediation, (c) whether the participants in the Mediation acted in good faith (and which, if any, did not), and (d) whether and to what extent the Mediation was successful. At any time during the Mediation, the Mediator, in his sole discretion, may also file interim status reports with the Court (limited to the same sort of procedural substance described in the preceding sentence). The Mediator may also inform the Court of any Mediation Party's refusal to attend, in its entirety, any Mediation session at which such Mediation Party's attendance is required by the Mediator.

16. The Mediator shall be immune from claims arising out of acts or omissions incident to their service in the Mediation or in these Chapter 11 Cases.

17. The Debtors-Plaintiff are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

18. For the avoidance of doubt, to the extent any part of this Order shall conflict with Local Rule 9019-1 or the General Order, the terms and provisions of this Order shall govern.

19. Notwithstanding the possible applicability of the 14-day stay in Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry, such stay having been waived for cause shown.

20. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: November 13, 2026
White Plains, New York

***/s/ Sean H. Lane***
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE